| | |
|---|---|
| 76 | 207 |
| 106 | 425 |
| 76 | 207 |
| 112 | 514 |

THE PEOPLE v. GEORGE F. PEARL AND HENRY M. PEARL.

*Criminal law—Assault and battery—Self-defense—Provocation— Evidence.*

1. On the trial of *two* respondents for an alleged felonious assault, it is error to permit the complaining witness to testify to an attack made by him upon respondents' father shortly before their alleged assault, they not being present, and to the father's drawing a knife on the witness, and as an excuse for such attack to testify that he had heard that the father had made threats about the witness.

2. An assault by one armed with a deadly weapon upon another who is not near him or threatening him is indefensible.

3. Homicide is not justifiable except in case of necessity, and perhaps that doctrine may have some application in other willful cases of felonious injury.

4. The law has enough regard for the weakness of human nature to regard a violent attack as a sufficient excuse for going beyond the mere necessities of self-defense, and chastising the aggressor within such bounds as do not exceed the natural limits of the provocation.

5. It would encourage and not restrain violence to allow a man to put the safety of others in danger by actual violence and offensive assaults, and then save himself from punishment by stopping retaliation as soon as his adversaries get the better of him.

6. When a man is provoked by another, the offender runs the risk of

suffering to the extent of the provocation; and, while the law never sanctions the use of force beyond what is naturally pro_ voked, it does not keep all its tenderness for the wrong-doer who begins the mischief.

Exceptions before judgment from Berrien.  (O'Hara, J.) Argued June 20, 1889.    Decided July 11, 1889.

Respondents were informed against for assault with intent to do great bodily harm less than the crime of murder, and convicted of assault and battery.    Conviction set aside and respondents discharged.    The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*C. B. Potter* and *N. A. Hamilton,* for respondents.

*S. V. R. Trowbridge,* Attorney General, and *George W. Bridgman,* Prosecuting Attorney, for the people.

CAMPBELL, J.    Respondents were charged by information with assaulting one William B. Tyler, with intent to do great bodily harm, less than the crime of murder.    They were convicted of assault and battery, which amounted to an acquittal of the felonious charge.

The case is peculiar in some of its features, and the finding of the jury must have been suggested by legal difficulties in understanding the elements of such offenses.    Tyler was very severely punished, but it is hard to see any disposition on the part of defendants to do him permanent injury that would disable him.    On the other hand, if they are believed, he gave them great provocation, and attempted to hurt them badly with a weapon.    The testimony is not denied that they let him up when he begged them to, which does not indicate much, if any, malice.

The facts, in brief, were these, colored, perhaps, by circumstances:

Tyler and George C. Pearl, the father of defendants, who

is an old man, were neighbors. Tyler was a highway officer, and on the day in question was cutting brush and timber near the line. Old Mr. Pearl met him, and while not moving towards Tyler the latter went up to him with a revolver. The old man attempted to draw a knife, and Tyler knocked him down. There was no testimony indicating that Tyler had any reason to fear an attack. He made the attack himself, and the only pretext he gave was that some three years before the old man had used threatening language about him. Proof was allowed by one Brown to testify about such a conversation three years before. All of this was improper, as the attack made by Tyler on the old man was not in presence of his sons, or a part of that affray, and furthermore it could not be permitted to a man with a deadly weapon to assault another, who was not near him, or threatening him. The reception of the evidence about the old man was injurious, because it gave a color to the subsequent transactions which was not proper.

Upon the second performance of the morning the parties were directly at variance in their testimony. Tyler swears that he was attacked first, and the defendants swear that they were attacked, or that one of them was attacked, by Tyler. According to Tyler, it was about half an hour after the old man left that the fracas with the sons took place, and he claims he was taken unawares. But there can be no doubt, according to his own testimony, that he then had the revolver in his hand, and if he did his story is not credible. But, however this may be, there was a rough and tumble fight, in which one of defendants got away the revolver, and in the skirmish he hurt them and they hurt him, and finally they let him up when he said he had enough. Defendants say they went up because they heard an outcry, and feared the old man had been assaulted, and, although they found no one at the place but Tyler, they say he at once made a rush and began the fight.

76 MICH.— 14.

It seems to us that the court shut out questions and answers that had a legitimate tendency to explain defendants' position, and that it was also improper to cut short the account of what they said without allowing their whole explanation. But, as the charge was erroneous in the main elements of the case, we shall not dwell on the minor questions.

In charging the jury upon what would constitute the statutory offense, the court instructed the jury that, if defendants used either a revolver or a stone such as Tyler swore to, they might be warranted in finding it such a dangerous weapon as would warrant a finding of the statutory intent. Defendants swore that they only used their fists. The jury must have found that they told the truth, and that Tyler did not. And this is manifest from the rest of the charge, in which the whole stress was laid on the right of self-defense. In various forms, but with the same result, the jury were told that the right to defend one's person ends with the necessity, and that even if justified in entering the conflict with Tyler, and disarming him, neither of them would be justified in using force after the necessity ceased to exist, and any further violence would be a battery. And subsequently the right of self-defense was put on the ground that there was no other reasonable way of escape.

We must assume, as from all the testimony it is hardly possible to doubt, that this whole affair was brought about by the ugliness of Tyler. And in our opinion the case did not call for any such discussion of the doctrine of self-defense. Homicide is not justifiable except in case of necessity, and perhaps that doctrine may have some application in other willful cases of felonious injury. But here the defendants were acquitted of any felonious attack. Being merely found guilty of assault and battery, they were entitled to have the question of provocation put to the jury. The law has enough regard for the weakness of human nature to regard a violent attack as a sufficient excuse for going beyond the mere neces-

sities of self-defense, and chastising the aggressor within such bounds as do not exceed the natural limits of the provocation. That these defendants were not instigated by cold-blooded malice is evident from their releasing Tyler as soon as he gave up. So long as he continued fighting, it cannot be said defendants went beyond reason in fighting also, so long as they did not resort to weapons, as the jury must have found they did not. The only two points put to the jury were—

1. Whether there was an assault with intent to do great bodily harm.

2. Whether defendants exceeded the right of self-defense.

The former the jury acquitted them of. The latter was not necessarily in the case, and if they were assaulted or threatened by Tyler while he was armed—as he admits he was—they were not to be judged on any such narrow doctrine. If would encourage and not restrain violence to allow a man to put the safety of others in danger by actual violence and offensive assaults, and then save himself from punishment by stopping retaliation as soon as his adversaries get the better of him. When a man is provoked by another, the offender runs the risk of suffering to the extent of the provocation; and, while the law never sanctions the use of force beyond what was naturally provoked, it does not keep all its tenderness for the wrong-doer who begins the mischief.

While the record requires the conviction to be set aside, the propriety of ordering a new trial depends a good deal on the state of the record. If the jury were right in finding there was no felony, this case should have been tried by a justice. And on the facts before us the acquittal of the felony indicates very clearly that Tyler's account was discredited, and that the jury had their attention chiefly turned to the case as shown by defendants. The charge of the court, apart from that relating to felony, indicates that defendants were only supposed to be in the wrong for exceeding the bounds of self-

defense, when the case does not tend to show that they had not extreme provocation and some necessity of using force. Under all the circumstances, we think public justice would not be furthered by any continuation of this prosecution, and no new trial will be awarded. If the defendants were not the aggressors, they ought not to have been convicted at all, and the verdict indicates, when read with the charge, that they were not responsible for the fight. We have no doubt that such a conclusion was warranted, and would have been reached except for the rulings.

The circuit court must be advised that in the opinion of this Court the conviction should be set aside, and the respondents discharged from further prosecution.

The other Justices concurred.