·STATE, RESPONDENT, *v.* SMITH, APPELLANT.

[Argued June 17, 1892.   Decided July 25, 1892.]

CRIMINAL PRACTICE — *Filing of information — Motion in arrest of judgment.* — A motion in arrest of judgment must rest upon statutory grounds, and therefore, it is not error to deny a motion of that nature made upon the ground that the information on which the defendant was tried was not made and filed within thirty days after the delivery of the complaint to the District Court, as such ground is not enumerated in section 357 of the Criminal Practice Act, prescribing the cause for which a motion in arrest of judgment may be granted.

SAME — *Objection to information — Waiver.* — Objection to an information, on the ground that it was not filed within the time allowed by law, should be taken advantage of by the defendant at the time he is required to answer the information, by motion to set it aside, as allowed by sections 205 and 206 of the Criminal Practice Act, as under section 208 of the Criminal Practice Act, if such motion be not made before the defendant demurs or pleads, the ground of objection shall be deemed waived.

SAME — *Information — Time for filing.* — Sections 1, 2, pages 248, 249, of the Laws of the Second Session, permit the filing of an information within thirty days after the granting of leave therefor by the court, independent of the time when the examination took place.

SAME — *Arrest of judgment — Objection to information — Waiver.* — Where the defendant did not plead to the information until the venue had been changed to another county, his motion in arrest of judgment, upon the ground that the information was not filed in time, was properly denied under section 233 of the Criminal Practice Act, providing that all questions concerning the regularity of proceedings, and the right of the court to which the change is made to try the cause and execute judgment, shall be considered as waived after the trial and verdict.

CRIMINAL LAW — *Evidence — Writings explaining motives.* — A written order from the county commissioners to the prosecuting witness, who was a road supervisor, directing him to open a road through defendant's field, of which order defendant had knowledge, is competent evidence to explain the motives and conduct of the witness in cutting defendant's fence, at the time he was fired upon by the defendant.

SAME — *Assault with intent to murder — Trespass.* — A bare trespass against the property of another, not his dwelling-house, is not sufficient provocation to warrant the owner in using a deadly weapon in its defense; and therefore, on the trial of one charged with assault with intent to commit murder, evidence on behalf of defendant tending to show that the proceedings and order of the county commissioners, under which a road supervisor was attempting to open a road through defendant's field, were void, is properly excluded.

*Appeal from Ninth Judicial District, Gallatin County.*

Conviction for assault with intent to commit murder. Defendant was tried before ARMSTRONG, J.   Affirmed.

*E. P. Cadwell,* for Appellant.

I.   The court below erred in overruling the motion in arrest of judgment on the first ground stated therein; that is, that this

information was not laid in time, that is, within thirty days after the return of the committing magistrate to the District Court of Yellowstone County of the complaint and other papers in his hands relative to this matter. Section 2 of " an act relating to information in criminal cases," found on page 248, Second Session, 1891, Montana, is mandatory and requires the prosecuting attorney within thirty days after the return or delivery of the complaint and other papers to the proper District Court, to file in such court an information, etc. The delivery of the papers in this case was made August 5, 1891. The information was laid October 20, 1891. No leave of the court, as provided in the first section of said act, is recited or even relied upon in said information as the ground for said action; hence, we say the statute being mandatory and not having been complied with, the first ground of said motion should have been sustained. (Potter's Dwarris on Statutes, pp. 222–226; Cooley's Constitutional Limitations, pp. 88–98.)

II.  The court erred in overruling defendant's objection to the introduction of the order made by the county commissioners to Church. For if it was necessary in order for the State to make its case that the legality of the road and the authority by which the said Church and the officers were there endeavoring to open a road should be proven, then certainly there should have been allowed to the defendant the right to prove that there was no road there to open, and that the pretense of an order, by virtue of which they were there, was invalid and of no effect for any reason, and especially that the order was issued without any authority either over the subject-matter or the persons.

III.  Proceeding of a board of commissioners laying out a highway, which is void because of failure to comply with statutory requirements, constitutes no justification to such supervisors for a threatened occupation by them of the land for the purpose of such highway. (*Ruhland* v. *Jones*, 55 Wis. 673; *Church* v. *Joint School District*, 55 Wis. 399; *Ruhland* v. *Supervisors of Town etc.* 55 Wis. 664; *State* v. *Castle*, 44 Wis. 670; *Roehrborn* v. *Schmidt*, 16 Wis. 519; *Flint & Pere Marquette Ry. Co.* v. *Willey*, 47 Mich. 88; *Carroll* v. *State*, 23 Ala. 28; 58 Am. Dec. 282; *In re Grove St.* 61 Cal. 438; 2 Dillon on Municipal Corporations [3d ed.], § 769; *People* v. *Spencer*, 55 N. Y. 1;

*People* v. *Supervisors,* 11 N. Y. 563; *Westfall* v. *Preston,* 49 N. Y. 353; *In re City of Buffalo,* 78 N. Y. 362.) The rule is that evidence showing threats not communicated, as well as those cummunicated, should be received in a criminal case for the purpose of showing the intent with which an act is done and the relative *status* of the parties. (*Wiggins* v. *People,* 93 U. S. 465, 467; *Stokes* v. *People,* 53 N. Y. 164; 13 Am. Rep. 492; *Lyon* v. *Hancock,* 35 Cal. 372; *Campbell* v. *People,* 16 Ill. 17; 61 Am. Dec. 49; 17 Wharton's Criminal Evidence, § 757.) Hence the defendant should have been allowed to show just what the instructions were that were given by the board of commissioners to Ramsey and Terrill when they went with Church to open this particular road. A man need not be in actual imminent peril or danger of his life or of great bodily harm before he may slay his assailant. It is sufficient if in good faith he believes, from the facts as they appear to him at the time, that his life is in such imminent danger. (*People* v. *Payne,* 8 Cal. 343; *People* v. *Honshell,* 10 Cal. 88; *People* v. *Flanagan,* 60 Cal. 2; 44 Am. Rep. 52; Wharton's Criminal Law [8th ed.], §§ 97, 100, 487, 489, 501, 505–520; Cooley on Torts, §§ 324, 326; *Iron Mountain etc. R. R.* v. *Johnson,* 119 U. S. 611; *Denver etc. Ry.* v. *Harris,* 112 U. S. 606; *Reeder* v. *Purdy et ux.* 41 Ill. 285; *Casebeer* v. *Rice,* 18 Neb. 203; *People* v. *Hubbard,* 24 Wend. 372; 35 Am. Dec. 628; *Ilsly* v. *Nicols,* 12 Pick. 270; 22 Am. Dec. 425; *Erwin* v. *State,* 29 Ohio St. 199; 23 Am. Rep. 733; *White* v. *Territory,* 3 Wash. Ty. 397; 1 Am. & Eng. Encycl. of Law, p. 818; 4 Am. & Eng. Encycl. of Law, p. 621; *Marnoch* v. *State,* 7 Tex. App. 269; *Pharr* v. *State,* 7 Tex. App. 472; *Jordon* v. *State,* 11 Tex. App. 435–449; *Shorter* v. *People,* 2 N. Y. 197; 51 Am. Dec. 286; 1 Bishop on Criminal Law, §§ 841, 849; 1 Lawson's Defenses to Crime, § 386.) It was for the jury to say by its verdict whether Church, Ramsey, and Terrill were committing a mere trespass or were there intending to do injury to the property or person of the defendant with an armed body of men. The instruction given on this question invades the province of the jury and determines the issue that should have been submitted to them. (*Preston* v. *Keys,* 23 Cal. 195; *Brumagim* v. *Bradshaw,* 39 Cal. 51; *Cahoon* v. *Marshall,* 25 Cal. 198; *Wood*

v. *Tomlinson*, 53 Cal. 720.) The intent to commit murder is the gist of this action. No injury being done, hence no inference of intent is manifest or can be drawn from the act done; therefore, direct proof must be made of the intent, and it is for the jury to find whether this element of the crime was present, and it is eminently proper that the jury should be instructed on the basic element of the crime charged. (*State* v. *Bloedow*, 45 Wis. 279; *People* v. *Keefer*, 18 Cal. 637; *People* v. *Lilley*, 43 Mich. 521; Wharton's Criminal Law, § 641, et seq.)

*Toole & Wallace*, of counsel, for Appellant.

I. The court erred in excluding the evidence tending to show that the proceedings and order of the county commissioners was void. It is conceded that the order was introduced for the purpose of showing the good faith of Church, and that he was justified in doing or attempting to do what he did. If, therefore, the order was competent as going to show the real purpose with which the act was done or attempted to be done by Church, it was a legitimate link in the chain of testimony tending to rebut the presumption thereby raised, to show as a fact that such order was void, and as explanatory of his real purpose. He had been notified and admonished not to attempt to tear down the fence and open the road under such an order, which in consideration of the fact that it was void, not only made it competent in rebuttal of the good faith of Church, but was a circumstance calculated to excite hot blood in appellant, and extenuate the crime charged. Had the evidence showing that the proceedings and order were void been admitted, the jury would have been able to determine whether the grade of the offense was reduced to an attempt to commit manslaughter, or justifiable, as the case may be, on account of the ownership and right of possession of appellant, and the violent and forcible attempt to enter by Church and his confederates. Appellant then had a right to establish his title and right of possession as tending to show his mental condition at the time of the shooting, to rebut the inferences of premeditation and malice arising from the use of a deadly weapon, and thereby extenuate the crime, if death had ensued from the shot fired, from an attempt

to commit murder to an attempt to commit manslaughter. (Wharton's Criminal Law [8th ed.], § 641; *State* v. *White*, 45 Iowa, 325; *State* v. *Waters*, 39 Me. 54; *State* v. *Phinney*, 42 Me. 384; *State* v. *Butman*, 42 N. H. 490; *State* v. *Reed*, 40 Vt. 603; *State* v. *Nichols*, 8 Conn. 496; *Beckwith* v. *People*, 26 Ill. 500; *People* v. *Congleton*, 44 Cal. 92; *Wall* v. *State*, 23 Ind. 150.) That appellant had a right to show that the proceedings and order were void, and that he was the actual owner of the crop and premises, for the purpose of reducing the grade of the offense to an attempt to commit manslaughter, we also cite *People* v. *Costello*, 15 Cal. 350; *People* v. *Payne*, 8 Cal. 341; *State* v. *Rutherford*, 1 Hawks, 457; 9 Am. Dec. 658; *State* v. *Zellers*, 7 N. J. L. 230; *In re Grove St.* 61 Cal. 438; *In re City of Buffalo*, 78 N. Y. 362.) If the order and proceedings were void it was a highly provoking attempt to take by force the property of defendant from his possession, and was competent in determining the state of his mind and as explanatory of his acts.

II. The court should have admitted the evidence offered going to show that the order was void; that appellant was holding possession as owner, and of the threats that were made, so as to leave the question fairly to the jury whether appellant was compelled to choose between killing Church or submission to an unlawful eviction from the lawful possession of his own property. If the emergency was so pressing as to leave it his only alternative to fire the shots or surrender his right to defend his property, evidence of these threats tended to show such emergency and was competent either in mitigation or justification. (1 Wharton's Criminal Law [8 ed.], 414, and authorities under note 5; *Slackby's Case*, 1 East, p. 5, § 158; *Housin* v. *Barrow*, 6 Term Rep. 122; 1 Russell on Crimes, § 621.) The combination was an armed body of men to commit an unlawful act in disturbing appellant in the enjoyment of a legal right, and threats were evidence of the intention to do so. (*Commonw.* v. *Runnels*, 10 Mass. 518; 6 Am. Dec. 148; Comp. Stats. p. 538, §§ 144, 145; *Kiphart* v. *State*, 42 Ind. 273.)

III. The statute in some cases makes a given state of facts presumptive evidence of others, and in such cases the court is warranted in so instructing the jury. But here the court has gone further and made a given state of facts conclusive of defend-

ant's guilt, leaving out altogether the essential ingredients of the crime. It assumes to tell the jury that if Church was acting in good faith in attempting to lay out a road under the order of the court, regardless of how it may have appeared to defendant, as a reasonable person, it could not in law, as a fact, be an attempt by violence to commit a felony, and consequently the shooting was an attempt to commit murder. Without reference to the state of defendant's mind, it assumes not only to tell the jury what presumptions are raised from certain facts, but what conclusions must emphatically be reached and pronounced by their verdict. (Comp. Stats. § 275, p. 456; *People* v. *Walden*, 51 Cal. 589, 604; *Stone* v. *Geyser M. Co.* 52 Cal. 318; 2 Hayne on New Trial and Appeal, 335; *People* v. *Carrillo*, 54 Cal. 63; 1 Greenleaf on Evidence, 48.) Section 33, page 507 of the Compiled Laws of Montana, is applicable to the offense charged in the information, and is entirely ignored in defining what facts constitute the crime. The court in so many words told the jury that the facts stated, etc., were insufficient to generate a reasonable fear that a felony was about to be committed, when it should have been left to the jury from the evidence before them, upon instructions as to the law applicable in such cases. Such is the rule aside from the statute. (1 Bishop on Criminal Law, 841, et seq.; Horrigan & Thompson's Cases—Self Defense, 866.) If defendant had a legal right to resist the trespass and would have been slain if he did so, he was compelled to submit under the instruction of the court. This would absolutely deprive a man of using such force as was used to defend his property and possessions, thereby reversing the whole doctrine of criminal jurisprudence upon the subject. The jury should have passed upon the question involved. (Horrigan & Thompson's Cases—Self Defense, 863–866.) Any fact that would tend to show provocation was competent under the authorities as tending to disprove malice and premeditation. (Wharton's Criminal Evidence [8th ed.], 334; *Maher* v. *People*, 10 Mich. 212; 81 Am. Dec. 781.) Intent to commit manslaughter is included in the information, and if the jury has reasonable doubt as to premeditation or malice, they could not convict of assault with intent to murder. (Wharton's Criminal Evidence [8th ed.], 721, and note 1.)

*Henri J. Haskell,* Attorney-General, and *James R. Goss,* for the State, Respondent.

The motion in arrest of judgment upon the ground that the information was not filed within thirty days from the time the defendant was committed, was properly denied, as the record shows that the same was filed in the presence of the court by the county attorney and by the order of the court. The action of the court in ordering the information to be filed is supported by the provisions of section 2 of "an act relating to informations in criminal cases," approved March 2, 1891, page 249, Laws of 1891. This ground here relied on, on motion in arrest of judgment, is not authorized by statute. (§ 357, ch. 13, div. 3, Crim. Prac. Act.) Motion in arrest of judgment can only be based on statutory grounds. (*People* v. *Indian Peter,* 48 Cal. 250; *People* v. *McCarty,* 48 Cal. 559; *People* v. *Fair,* 43 Cal. 137.) The order of the board of county commissioners which was offered in evidence and admitted over the objections of the defendant was material to show the authority of the road supervisor to act, and his justification for opening the road through defendant's land. The record of the commissioners' proceedings was offered by defendant for the purpose of showing that the requirements of law in the matter of laying of the road had not been complied with, and the supervisor was therefore a trespasser, and the defendant was justified in using force to prevent him from acting under the order. The record was immaterial. It is a rule of law, that where the trespass is barely against the property of another, not his dwelling-house, it is not a provocation sufficient to warrant the owner in using a deadly weapon; if he does, and with it kill the trespasser, this will be murder, because it is an act of violence beyond the degree of provocation. (*Commonw.* v. *Drew,* 4 Mass. 395; *Roberts* v. *State,* 14 Mo. 138; 55 Am. Dec. 101; *State* v. *Vance,* 17 Iowa, 148; *McDaniel* v. *State,* 8 Smedes & M. 401; 47 Am. Dec. 99; *Kunkle* v. *State,* 32 Ind. 225; *State* v. *Morgan,* 3 Ired. 186; 38 Am. Dec. 717; *State* v. *Smith,* 20 N. C. 100; *Johnson* v. *Patterson,* 14 Conn. 1; 35 Am. Dec. 102; *Carroll* v. *State,* 23 Ala. 28; 58 Am. Dec. 286, 287; *People* v. *Miller,* 49 Mich. 23; *Blake* v. *State,* 3 Tex. App. 589.) The defendant in this case

had a remedy by injunction or writ of *certiorari* (*Church* v. *Joint School Districts*, 55 Wis. 403; *Diedrichs* v. *Northwestern U. Ry. Co.* 33 Wis. 219), or by appeal to the District Court. (§ 1821, div. 5, Gen. Laws.)

BLAKE, C. J. — The defendant was convicted of the crime of assault with the intent to commit murder. A complaint was filed July 27, 1891, in the justice's court of Yellowstone County, and the magistrate, after hearing the evidence, adjudged, August 6, 1891, that there was probable cause for believing Smith guilty, and ordered that he be held to answer the charge at the next term of the District Court. The complaint and other papers in the action in the justice's court were filed August 16, 1891, in the District Court of Yellowstone County. The county attorney filed, October 15, 1891, an information in the presence of and by the order of said District Court. Leave was given October 31, 1891, to the county attorney, to have the names of some witnesses indorsed upon the information; and on the same day, upon the motion of defendant, the place of trial was changed to Gallatin County. The defendant entered January 21, 1892, his plea of not guilty. The jury returned a verdict of guilty, and the defendant filed a motion in arrest of the judgment, upon this ground: "That the prosecuting attorney of Yellowstone County, Montana, to wit, J. R. Goss, had no right or legal authority to file and make the information in this cause, upon which he was tried; . . . . and that the information on which the defendant was tried was not made and filed until October 16, 1891, more than thirty days elapsing between the return of the said complaint and papers to said District Court of Yellowstone County, Montana, and the filing of said complaint." This motion was overruled, and we will review this action of the court. The statute which governs the subject contains this clause: "When the defendant has been examined and committed or admitted to bail, as provided by law, or upon leave of court, the county attorney must, within thirty days after the delivery of the complaint and other papers to the proper District Court, or after such leave, file in such court an information charging the defendant with the offense for which he is held to answer, or with which he is charged, or any other offense by the facts

disclosed." (2 Sess. Laws, p. 249, § 2.) It is further enacted that all the provisions of the law regulating prosecutions upon indictments shall apply "in the same manner, and to the same extent and effect, as near as may be," to proceedings by information. (2 Sess. Laws, p. 250, § 4.)

Let us consider the provisions of the Criminal Practice Act which are pertinent to this inquiry. A motion in arrest of the judgment may be granted for the following causes: "That the grand jury who found the indictment had no legal authority to inquire into the offense charged, by reason of it not being within the jurisdiction of the court; . . . . that the facts stated do not constitute a public offense." (Comp. Stats. div. 3, § 357.) It is uniformly held that this motion must rest upon these statutory grounds, and it is apparent that the court acted rightly thereon. The defendant did not resort to the appropriate remedy for the failure of the county attorney to comply with the statute. When the defendant was arraigned, the statute authorized him to move to set the information aside, or demur, or plead thereto. (Comp. Stats. div. 3, § 205.) The information "shall be set aside" when it has not been presented as prescribed by law. (Comp. Stats. div. 3, § 206.) If the motion to set aside be not made before the defendant demurs or pleads, the ground of objection to the information, which might have been thereby made, "shall be deemed waived." (Comp. Stats. div. 3, § 208.) The importance of this statutory requirement is obvious. If the motion be granted, the court may direct a resubmission of the case. (Comp. Stats. div. 3, § 210.) Every question of this nature should be pointed out before the trial. It was held in *Territory* v. *Hart*, 7 Mont. 55, that a defendant who failed to make this motion for the cause that twelve grand jurors did not concur in finding the indictment, before he demurred or pleaded thereto, waived his objections to the indictment. A defendant has a right to insist upon an examination "before he can be put upon his trial, or called upon to answer the information," in Michigan. Mr. Justice Christiancy, in *Washburn* v. *People*, 10 Mich. 393, said: "It is not a matter which goes to the merits of the trial, but to regularity of the previous proceedings. If he make no objection on the ground that such examination has not been had or waived, he must be understood to admit that it has been had, or that he

has waived or now intends to waive it. If he intends to insist upon the want of the examination, we think he should, by plea in abatement, set up the fact that it has not been had, upon which the prosecuting attorney might take issue, or reply a waiver; or he must, upon a proper showing by affidavit, move to quash the information. The latter is the simpler course." (*Hamilton* v. *People*, 29 Mich. 177; *People* v. *Stacey*, 34 Cal. 307; *State* v. *Collyer*, 17 Nev. 279.)

The appellant did not enter his plea to the information until the District Court of Gallatin County had acquired jurisdiction of the case. Another section of the Criminal Practice Act should be examined: "All questions concerning the regularity of proceedings, and the rights of the court to which the change is made to try the cause and execute judgment, shall be considered as waived after trial and verdict." (Comp. Stats. div. 3, § 233.) We think that one clause of the act concerning the information has escaped the attention of the appellant: —

"All criminal actions in the District Court, except those on appeal, shall be prosecuted by information, after examination and commitment by a magistrate, or after leave granted by the court, or shall be prosecuted by indictment without any such examination or commitment, or without such leave of the court." (2 Sess. Laws, p. 248, § 1.)

When this language is read in connection with the section *supra*, it is evident that the information can be filed within thirty days after the granting of leave therefor by the court, independent of the time when the examination took place. The statute has been strictly complied with, and there is no merit in the argument that the court did not have jurisdiction of the case.

A brief statement of the facts will aid us in presenting the other rulings of which appellant complains. Frank Church was the road supervisor of the district in which the land of said Smith is situate, and as such officer received the following order: —

"Office of the Clerk and Recorder, Yellowstone County, Montana.

"BILLINGS, MONT., March 11, 1891.

"*Mr. Frank Church, Road Supervisor, District No. 4, Billings, Montana*—DEAR SIR: You are hereby directed, from, on, and

after May thirteenth (13), 1891, to open and work the following described county road, to wit: [Description of road.]

"By order of the Board of County Commissioners of Yellowstone County, Montana.

"Witness my hand, and the seal of said county, this eleventh day of March, 1891.

[SEAL.]        "FRED. H. FOSTER, County Clerk."

It is maintained by appellant that the admission in evidence of this order is an error.

Upon the trial Church testified that he was proceeding, July 27, 1891, to open the road through the land of defendant by virtue of the foregoing order of the county commissioners, and saw defendant "walking fast" towards his house, and then he "came running out of the house with a Winchester rifle in his hand, and as he came along he motioned to some one, and he spoke twice, and said, 'Get out of there,' and motioned towards where I was, and towards where Mr. Ramsey and Mr. Terrill were. He stopped twice and then came on again. The sheriff came on behind on a run. During the times he stopped he was about half-way to the house from where I was. I had been working all the time. Each time he stopped he raised his gun. I was looking at him at the time, and was tearing the wire off a cedar post. I was on the outside of the fence, and as he raised his gun I jumped over a pile of plank. I had not got down behind it when he shot. He shot towards me. It was the way his gun was directed. At the time the shot was fired there was something hit me in the face, and something whizzed past my face, and afterwards, when I went to work on that road, I found the post which the bullet went through." The witness also testified he had had several conversations with the defendant before this time. "The first I had with him of any account was on the thirteenth day of March, 1891. I was opening the road, and expected to open the fence the full length; that is, I commenced that. I calculated to open it that day. When I came to Mr. Smith's fence he came out and told me I could not go through there—go through his ranch. I said, 'I have got an order in my pocket from the board of county commissioners to open the road through here.' But he had a Winchester rifle. He came there with it. I took it to be this same one. He said

he came out there to keep me from going through. He said he would not let them put a road through there. I told him I did not come prepared to fight my way through, but was instructed to report to the officers if I had trouble. I told him that his saying I could not go through would not keep me from going through. . . . . The next time I had a conversation with him was between that time and this. I had two or three. I built some bridges near his place, and he was out there. He told me all along that I would never get through there; that he was not going to have it through there. I saw him one day going home, and I said, 'Hello, Smith! the commissioners are in session now, and they are liable to tackle you about that road again;' and he said, 'You will never get through there.' I told him, 'That depends on what kind of orders I get.' He said, 'It don't make a damn bit of difference what kind of orders you get; you will never get through there.'" Upon cross-examination the witness testified that the county commissioners directed the sheriff and another person to go with him for his protection to the place of defendant on July 27, 1891.

Mr. Ramsey testified that he was the sheriff of Yellowstone County, and went July 27, 1891, to the land of defendant to keep the peace. "The defendant was irrigating, and threw down his spade, and started to the barn or stable, and I met him at the corner of the stack yard. I said, 'How do you do, Mr. Smith?' He said, 'I want you to get off my premises;' and I said, 'I came over to have a talk with you.' He said, 'These are my premises, and I order you off them.' I said, 'I came over here to talk with you, and I am going to do it.' He moved around and went to the house, and in a pretty fast walk. I followed him. It was fifty yards to the house, I judge. As soon as he got to the door he picked up his gun, and came out. I said, 'Hold on there, Smith. Don't you go any further. I am going to see that there is no trouble here to-day.' Church was about a hundred yards away, pecking on a post. There was an irrigating ditch between him and Church, and he (Mr. Smith) ran across it. I followed a little behind him, and once or twice I ordered him to stop, and he kept on running until he got within sixty yards of Mr. Church, and drew up his gun,

took deliberate aim, and fired." The witness also testified that he and his deputy were armed.

Mr. Terrill testified that he was present July 27, 1891, upon the land of defendant. "I wanted to talk to him, but he would not have it. . . . . Mr. Smith went a hundred yards before he fired at Church. He was sixty or sixty-five yards from Church when he pointed his gun at Church and fired. After Smith fired, he said something like, 'I told you I would.'"

The defendant testified: "Mr. Ramsey said, 'How do you do, Mr. Smith?' and I said, 'How do you do, gentlemen?' He said, 'I want to talk to you.' I said, 'If you want to talk to me, call that man back;' and they did not answer. 'I took two or three steps towards Church, and asked him to stop, and he would not. I then told Ramsey and Terrill to leave the premises. Instead of doing that, they started to close in on me. I then went to the house. I told them to leave two or three times. I supposed they were going to try to do something with me. I went in the direction of my house, and got my rifle, and stepped out of the door with it, and went on and passed them, and jumped across the ditch, and hallooed to Church to get away from there nearly every step I took. He didn't pay any attention to me. I stopped a minute, and as I raised the gun he jumped to one side. . . . . I shot past him to drive him off. . . . . I had told Church a number of times before this not to go through my field. I forbid him to cut down my fence. . . . . I knew Mr. Church was about to make an effort to open this road, when I saw him chopping the fence down." He also testified that "upon another occasion Mr. Ramsey came up in a buggy, and I spoke to him, and he said he had come to see that Church put that road through, and I said, 'You can't do it.' He said, 'Very well, I will arrest you right here.' 'Very well,' I said. I said he might make an arrest if he wanted to, but I would not let him put a road through."

Joseph Danford testified for the defendant about a conversation in the month of May, 1891. "Mr. Smith was on one side of the fence, and Mr. Church was on the other. Mr. Church walked up to within a few feet of the fence, and remarked to Mr. Smith that he would have to tear down the fence. Mr. Smith told him he could not do it. Mr. Church remarked

that he had that kind of orders, and he guessed if that was all he would have to go through; and he says, 'Will you resist?' Mr. Smith said, 'Most assuredly I will.'" John Reardon, called by the defendant, testified to the same effect.

The testimony proving the official character of the road supervisor and the sheriff and his deputy, and the object of their visit to this place, was introduced without objection upon the part of the defendant. It is generally known that sheriffs and their deputies, and officers enjoying similar public trusts, are of necessity armed with deadly weapons. After the appellant uttered his threats of resistance to the opening of the road, and displayed his rifle to intimidate Church, it was the duty of the officers who were present to be prepared for every emergency. The relations of all the parties were of a friendly nature, and the opening of the road has been the whole subject of dissension and hostility. The defendant knew that Ramsey, Terrill, and Church held responsible official positions, and that the road supervisor was engaged in the performance of a public duty at the time and place mentioned in the information. The defendant also knew that he was in no danger of receiving bodily harm from any of these persons, that none of them intended to commit a felony, and discharged his rifle at Church with a full knowledge of all the facts. The order of the board of county commissioners was competent evidence to explain the motives and conduct of the road supervisor.

The defendant offered in evidence the records of the board of county commissioners of Yellowstone County relating to the laying out of the road, and they were excluded, upon the objection of the State. This ruling is assigned as error. The transcript does not disclose the purpose for which this evidence was offered, but the appellant contends in his brief that the board of county commissioners did not comply in all respects with the law, and that the road was not legally laid out, and that the order under which Church assumed to remove the fence was unlawful. It is urged that, if this contention be sound, Ramsey, Terrill, and Church were armed trespassers, and that the defendant had the right to defend his person and property. We have already seen that the appellant was not called upon to protect himself, and that his weapon was aimed at the officer,

who was not attacking him or making any threatening demonstrations.

The simple question is whether the appellant was justified in committing the assault upon the road supervisor to prevent the opening of the road. The authorities are arrayed against this proposition. The statute embodying the principle which is applicable is expressed in these terms: "Justifiable homicide is the killing of a human being in necessary self defense, or in defense of habitation, property, or person against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against any person or persons who manifestly intend and endeavor, in a violent, riotous, and tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein." (Comp. Stats. div. 4, § 32.) "All other instances which stand upon the same footing of reason and justice as those enumerated shall be considered justifiable . . . . homicide." (Comp. Stats. div. 4, § 38.) One of the oldest cases is *Commonw.* v. *Drew,* 4 Mass. 391, which was tried in the year 1808, and the court charged the jury as follows: "For it is a rule of law that where the trespass is barely against the property of another, not his dwelling-house, it is not a provocation sufficient to warrant the owner in using a deadly weapon; and if he do, and with it kill the trespasser, this will be murder, because it is an act of violence beyond the degree of the provocation." These views have been repeatedly asserted. (*Roberts* v. *State,* 14 Mo. 138; 55 Am. Dec. 97; *Harrison* v. *State,* 24 Ala. 67; 60 Am. Dec. 450; *McDaniel* v. *State,* 8 Smedes & M. 401; 47 Am. Dec. 93; *Johnson* v. *Patterson,* 14 Conn. 1; 85 Am. Dec. 96; *People* v. *Honshell,* 10 Cal. 83; *People* v. *Flanagan,* 60 Cal. 2; 44 Am. Rep. 52; *State* v. *Vance,* 17 Iowa, 138; *Kunkle* v. *State,* 32 Ind. 220; *Davison* v. *People,* 90 Ill. 221; 2 Bishop on Criminal Law [4th ed.], § 641; Wharton on Homicide, §§ 414–540; *Bush* v. *People,* 10 Colo. 566.)

In *Bush* v. *People, supra,* decided in the year 1887, Mr. Justice Elbert, for the court, said: "It is well settled that a bare trespass against the property of another is not sufficient provocation to warrant the owner in using a deadly weapon in its defense, and if he do so, and with it kill the trespasser, it will

be murder; and this though the killing were actually necessary to prevent the trespass. . . . . The rule is the same whether the trespass be upon real or personal property; the law does not justify the shedding of human blood to prevent slight injuries to the property of others." Many of the circumstances in *Davison* v. *People, supra,* are similar to the case at bar. We make the following extract from the statement of the facts: "Robertson, the deceased, was one of the commissioners of highways of the town of Ella, in Lake County, and in company with the other two commissioners, Jacob Beese and August Knigge, and others, on September 8, 1877, went to open a highway in front of Davison's house, which the commissioners claimed had been obstructed by Davison by building fences across it. Davison claimed the road had never been legally laid out, or, if it had been, it had been legally vacated by appeal to three supervisors. The commissioners tried to persuade him to remove his fences, which he refused to do, claiming that the land where the fences were was his private property, which he would defend with all the force necessary for that purpose. The commissioners then directed the men who came to assist them to take down the fences, . . . ." and during the difficulty which ensued Robertson was mortally wounded. Mr. Justice Walker, in the opinion, said: "It is urged that the court trying the case erred in refusing to permit accused to introduce evidence that the place where the commissioners were attempting to remove the fence was not, as they claimed, a public highway; that the fact was important, not as a justification, but as showing the feelings of the parties, and as tending to shed light on the transaction; that it was a part of the *res gestæ.* . . . . It is not, nor can it be, claimed that the fact that there was no road where the attempt was made to remove the fence justified plaintiff in error in taking the life of deceased. The admission of the evidence would have raised a collateral issue that would have tended to confuse the jury, obscure the real issue, and could in nowise have tended to elucidate the true issue in the case. That issue was foreign to the case, and its trial was not proper. The evidence was before the jury that there was a dispute between accused and the road commissioners whether there was a road at this point, he claiming there was

not, and they insisting there was. This dispute had lasted for almost a year, and, if he believed there was no road there, that belief would explain his feelings and motives as fully as had the fact been established by proof. We are clearly of opinion there was no error in excluding this evidence. . . . . It is urged that the third instruction given for the people is erroneous. It informs the jury that accused would not be justified in killing deceased to prevent a trespass to his real estate, unless it was upon his dwelling-house. We apprehend that no well-considered case has gone the length of holding that a person may kill another to prevent a mere trespass to his property. A man's house is his castle, and he may defend it even to the taking of life, if necessary or apparently necessary to prevent persons from forcibly entering it against his will, and when warned not to enter and to desist from the use of force. The law affords ample redress for trespasses committed on a man's land, but does not sanction the taking of life to prevent it. The owner may, no doubt, oppose force with force to protect his property from injury or destruction, but not to the extent of taking life, or in excess of the necessity of the case. When he carries resistance to excess, and uses more force than is reasonably necessary, he becomes a wrong-doer. . . . . The twenty-second asked the court to instruct that, if the road commissioners and others were on the premises without his consent, they were trespassers. Suppose they were; that did not authorize him to shoot and kill deceased. . . . . The thirtieth asks the court to instruct that, if a prosecution for obstructing this road was pending against accused at the time, the commissioners would have no right to open the fence. Suppose this was true; it would follow that the commissioners were trespassers, and we have seen that would not justify accused in taking the life of Robertson."

We are satisfied that the question of the legality of the action of the board of county commissioners of Yellowstone County in laying out the road sustained no relation to the facts before the jury, and that these records were immaterial. Admitting that the road supervisor and the sheriff and his deputy were trespassers, the act of the appellant in using a deadly weapon was inexcusable.

The instructions are consistent with this theory, and we will not review them separately. The defendant in 11 requests for instructions, which were refused by the court, took a different view of the law, and insisted that his acts were justified, and that he was not guilty of the commission of any offense. It is the contention of the appellant that the order of the board of county commissioners was in violation of this statute: "No such road shall be ordered opened through fields of growing crops, or along a line where growing crops would thereby be exposed to stock, until the owner or owners of such crops shall have sufficient time to harvest and care for the same." (Comp. Stats. div. 5, § 1818.) It will be observed that the order complained of was made March 11, 1891, and within two days notice thereof was given to the appellant, and that at this season of the year there could be no growing crops. If we consider the matter in the most favorable aspect for the defendant, and assume that the road was "ordered opened" through his fields of growing grain, there was ample remedy in the courts for every grievance.

We discover no error in the record, and it is ordered and adjudged that the judgment be affirmed, and that the same be executed as directed by the court below.

*Affirmed.*

HARWOOD, J., and DE WITT, J., concur.