STATE RESPONDENT, v. LAGONI ET AL., APPELLANTS.

(No. 1,888.)

(Submitted April 26, 1904.   Decided June 3, 1904.)

*Criminal Law—Justice of the Peace—Bail—Action on Bail Bond—Pleading—Evidence.*

1.  A justice's court is of inferior jurisdiction, and no presumptions are to be indulged in favor of the regularity of its proceedings.
2.  Though a defendant is released on bail, if the bond was not lawfully required, it is *nudum pactum*.
3.  Constitution, Article VIII, Section 20, gives a justice court jurisdiction as an examining court in cases of felony, and Code of Civil Procedure, Section 745, declares that in pleading a judgment or other determination of a court, officer or board, it is not necessary to state the facts conferring jurisdiction, but the determination or judgment may be stated to have been "duly given or made." In an action on a bail bond the complaint alleged that a certain person was ordered by a certain justice of the peace to be held to answer on a charge of burglary, on which he was admitted to bail; the justice then and there having full authority and power to accept and approve the bond; and that he duly approved it, and ordered the release of

defendant. *Held,* that the complaint was insufficient for failing to allege the jurisdictional facts that the defendant was charged by a complaint filed with the justice, and examined upon the charge, etc., or to state the judicial capacity of the justice, and that the order holding defendant to answer was "duly given" or "duly made" or "duly given and made."

4. The fact that a magistrate accepting a bail bond failed to comply with the statute requiring it to be filed in the district court was no defense to the sureties in an action on the bond.

5. A complaint in an action on a bail bond is fatally defective where it fails to state that the amount due by the terms of the bond has not been paid.

6. Though a committing magistrate has made his return to the clerk of the district court, he still has power and authority to accept and approve the bail undertaking required by his order until the district court obtains final jurisdiction on the filing of an information, or the presentation of an indictment, or until a district judge or justice of the supreme court has fixed a new defendant's bail.

7. Where, in an action on a bail bond, it was shown that an information was filed against the defendant, charging him with a crime, and that he failed to appear and answer, and that the court thereupon ordered the bond forfeited, a contention that the state did not prove that an order of forfeiture was made was without merit.

8. Where the county attorney fails to comply with Penal Code, Section 1730, any advantage thereof must be taken by defendant by motion to set aside the information, which must be done before demurrer or plea, and failure to so take advantage of the irregularity waives it. The negligence of the county attorney in this respect cannot be taken advantage of by the sureties on defendant's bail bond.

9. The fact that a magistrate made a verbal order of release, instead of complying with Penal Code, Section 2354, was no defense to a surety in an action on the bail bond.

10. Insanity cannot be proved by reputation.

11. In an action on a bail bond defendant sureties pleaded that the principal in the bond, who had disappeared, was dead, when the bond was declared forfeited, and a witness testified for defendants that he knew of the principal having attempted to commit suicide on two different occasions. *Held,* that the testimony was properly stricken as immaterial.

12. In an action on a bail bond it appeared that the principal was charged with a felony about the middle of June, and that the case came on for trial in the following November, and defendant sureties offered to prove, in order to establish the death of their principal, that he was an old man; that on two or three occasions he had attempted suicide; that he lived in a place the surroundings of which were such that a body might lie for weeks, months and even years without discovery; that he had never been seen or heard of since about a week before the forfeiture of the bond, and that no trace had ever been found of him. *Held,* that the offer was properly denied.

*Appeal from District Court, Flathead County; D. F. Smith, Judge.*

Action by the state of Montana against N. P. Lagoni and W. F. Stufft. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendants appeal. Reversed.

*Mr. M. D. Baldwin,* and *Mr. Sidney M. Logan,* for Appellants.

*Mr. James Donovan, Attorney General,* for the State.

MR. COMMISSIONER CALLAWAY prepared the following opinion for the court:

The defendants have appealed from a judgment against them and from an order denying their motion for a new trial.

1.   They assert that the complaint filed against them does not state facts sufficient to constitute a cause of action. That pleading states that on the 1st day of May, 1901, the defendants covenanted with the plaintiff under their hands and seals to pay the plaintiff the sum of $1,000; "that said obligation was upon the express condition thereunder written that whereas, an order having been made on the 25th day of April, A. D. 1901, by A. McArthur, a justice of the peace of Kalispell township, Flathead county, Montana, that James E. Finch be held to answer to the district court of the Eleventh judicial district in and for Flathead county, Montana, on a charge of burglary, upon which he was admitted to bail in the sum of one thousand dollars, and thereupon said defendants tendered said bond to said A. McArthur, a justice of the peace as aforesaid, and said justice, then and there having full power and authority to accept and approve said bond, duly approved the said bond, and in consideration of the execution and delivery and giving of said bond ordered the release of said defendant mentioned therein, to-wit, James E. Finch, and thereupon and in consideration thereof, said Finch was released and discharged from custody;" that according to the terms of the bond defendants covenanted that Finch would appear at all times required in said court (probably meaning the district court), but that Finch failed to appear and answer to an information filed against him in the district court.

A copy of the undertaking, which substantially complies with the requirements of Section 2351 of the Penal Code, is attached to the complaint, marked "Exhibit A." No objection is made to the form or sufficiency of the undertaking.

It is apparent that there is a want of substance in this complaint. A justice's court is of inferior jurisdiction, and no presumptions are to be indulged in favor of the regularity of its proceedings. (*Layton* v. *Trapp,* 20 Mont. 453, 52 Pac. 208; *State ex rel. Kenyon* v. *Laurandeau,* 21 Mont. 216, 53 Pac. 536.) The Constitution provides that a justice's court shall have jurisdiction as an examining court in cases of felony (Article VIII, Sec. 21), and the statute provides the method of procedure; but that jurisdiction must, of course, be properly invoked. Was the jurisdiction of the justice's court properly invoked against Finch? If it was not, then the bail bond is *nudum pactum.* (*Deer Lodge County* v. *At,* 3 Mont. 168.) Before the justice could have made a valid order holding Finch to answer, he must have been charged, by complaint on oath filed with the justice, of having committed a public offense in the county of Flathead. He must have been brought before the justice on such charge, and have been examined upon it, unless he waived examination. If, upon examination, it appeared that a public offense cognizable by the district court had been committed in the county of Flathead, and there was sufficient cause to believe Finch guilty thereof, it was the duty of the justice to hold him to answer, and, if Finch waived examination, the duty of the justice was the same. Thereupon, the offense being bailable, it was the duty of the justice to admit Finch to bail, fixing the amount thereof.

In *Territory* v. *Hildebrand,* 2 Mont. 426, the court said: "While under our statute the jurisdiction of the court taking the recognizance need not be recited therein, nor the proceedings and orders requiring a party to enter into a recognizance for his appearance at court, these facts should appear in a complaint which seeks to recover judgment on such a recognizance." The recognizance required of a defendant under the statute in force when the *Hildebrand Case* was decided is practically the same as that required of Finch in this case. The word "recognizance," as then used, is practically synonymous with the word "undertaking," as now employed. The doctrine of the *Hilde-*

*brand Case* was followed in *Deer Lodge County* v. *At, supra,* and, while the authorities on this subject are not uniform, we shall not now depart from the rule heretofore established by this court. But a statutory method of pleading the jurisdictional facts is prescribed by Section 745 of the Code of Civil Procedure, which reads as follows: "In pleading a judgment, or other determination of a court, officer or board, it is not necessary to state the facts conferring jurisdiction, but such judgment or determination may be stated to have been duly given or made. If such allegation be controverted, the party pleading must establish on the trial the facts conferring jurisdiction." When the *Hildebrand* and *At Cases* were decided, Section 67 of the Civil Practice Act (Codified Statutes, 1871-72), which is nearly the same as Section 745, *supra,* was in force, but apparently the court's attention was not called to it. Section 67 was re-enacted as Section 101 of the Code of Civil Procedure in the Revised Statutes (1879). Sections 67, 101 and 745 apply to justices' courts. (*Weaver* v. *English,* 11 Mont. 84, 27 Pac. 396.) So that the complaint in this action should have stated the jurisdictional facts "in ordinary and concise language," or should have stated the judicial capacity of the justice of the peace, and that the order holding Finch to answer was "duly given," "duly made," or "duly given and made." Of course, stating that an order was "duly given and made" is no more than the statement of a conclusion of law, but it is made sufficient by statute, and is for the purpose of obviating the necessity of pleading the jurisdictional facts as the common law requires.

The complaint before us does not show that the court had jurisdiction to make the order holding the defendant to answer, nor that the order was duly given and made. The allegation that the justice had full power and authority to accept the bond does not in any wise cure the defect. The complaint is simply a mass of recitals. It states "that whereas an order having been made," and so forth. This is far too short of the statutory requirement. It does not even state that the order was "duly"

made. "The word '*duly*' is most essential. It can hardly be dispensed with and satisfy the terms of the statute. I can imagine no single word that will supply its place.  *  *  * The statute gives a short and simple form of pleading a judgment; and it is safest, if not indispensable, that the statute language be adopted and used when the party seeks to avail himself of this provision of the Code, instead of following the common-law forms in such cases." (*Hunt* v. *Dutcher,* 13 How. Prac. 538.) This case was followed in *Harmon* v. *Comstock Horse & Cattle Company,* 9 Mont. 243, 23 Pac. 470, in which this court also quotes from *Young* v. *Wright,* 52 Cal. 410, in part as follows: "A party wishing to avail himself of a provision of this character must comply strictly with its terms. In exonerating him from an obligation which would otherwise be incumbent upon him, the statute prescribes the precise conditions on which he is to be relieved; and they must be strictly performed." And see *Weaver* v. *English, supra; Knight* v. *Le Beau,* 19 Mont. 223, 47 Pac. 952; *Walter* v. *Mitchell,* 25 Mont. 385, 65 Pac. 5.

The reason for the rule that the jurisdictional facts must be pleaded, either directly or by the statutory method, is that neither the inferior court's jurisdiction nor the regularity of its proceedings is presumed, and, in order to prove the liability of the sureties upon the undertaking, it must be shown to be a valid one. Hence it is necessary to show that it was required of the accused by a court having jurisdiction of the offense proceeding under due form of law. While it is true that the consideration for the bond is the release of the accused from custody, yet, if the bond be not lawfully required of the accused, it is *nudum pactum.*

Defendants further say that the complaint is insufficient because it does not state that the undertaking was filed in the district court. This point is not well taken. If the magistrate had failed to comply with the statute in this regard, the sureties could not take advantage of it. (*State* v. *Wrote,* 19 Mont. 209, 47 Pac. 898.) However, we note that the complaint fails to

state that the district court declared the undertaking forfeited.

The complaint is also fatally defective because it fails to state that the amount due the plaintiff by the terms of the undertaking has not been paid.

2.    The state was permitted to introduce in evidence, over defendants' objections, certain papers filed in the justice's court, as well as his docket entries; also the undertaking, and order of the district court declaring it forfeited. The action of the court in admitting this evidence defendants allege to be erroneous, because the complaint fails to state a cause of action, and it appears that the bond was accepted and approved by the justice of the peace five days after he had certified his proceedings in the case to the district court. The sufficiency of the complaint being disposed of, we will take up the second ground of objection. Defendants say the justice, when he undertook to do so, had no jurisdiction to accept and approve the undertaking.

Section 2350 of the Penal Code provides: "When the defendant has been held to answer upon an examination for a public offense, the admission to bail may be by the magistrate by whom he is so held, or by any magistrate who has power to issue the writ of *habeas corpus.*"

Defendants say that the words "is so held" limit "the exercise of the power of admitting to bail to cases then pending before such justice, or in some manner retained within the jurisdiction of the justice taking the bail." The words "is so held" must be construed with the words "has been held." The latter are in the past tense. The bail where a defendant is held to answer may not be required until the order holding him to answer has been made. Then the magistrate who made the order, or one who has the power to issue the writ of *habeas corpus,* may admit the defendant to bail. No one else may do so. Thus no other justice of the peace than the one who made the order may step in and admit the prisoner to bail. But the magistrate who committed him can, and we regard this section as an extension of the committing magistrate's jurisdiction to that ex-

tent. The act of certifying up his proceedings to the district court is a mere ministerial one on part of the magistrate. The period elapsing after the magistrate has made his order committing the defendant and before he certifies his record to the district court is not one limiting the magistrate's power to accept and approve the undertaking. This section, which in terms allows the magistrate making the order to admit the defendant to bail, certainly means that the committing magistrate may approve and accept the undertaking which he has himself required by his order made upon holding the defendant to answer. Any other construction of this statute would, at times, infringe seriously upon a prisoner's right to be admitted to bail. All persons are bailable by sufficient sureties, except for capital offenses, when the proof is evident, or the presumption great, and excessive bail shall not be required. (Constitution, Art. III, Secs. 19, 20.)

If defendants are correct in their contention, a magistrate might make an order committing a defendant to jail until he should give bail in a certain amount, the magistrate might forthwith make his return to the clerk of the district court (Penal Code, Sec. 1693), and before the prisoner could procure the bail, and then the defendant could not be released from custody except upon the order of the district judge or a justice of the supreme court. In all of the judicial districts in the state except four, the district judge is at all times absent from some of his counties. The plight in which a prisoner might find himself in such case is apparent. No such hardship was intended by the statute in question. When the committing magistrate has made his returns to the clerk of the district court, we think he nevertheless still has power and authority to accept and approve the bail undertaking which is required by his order until the district court obtains final jurisdiction of the entire matter upon the filing of an information or the presentment of an indictment against the prisoner, or until a district judge or justice of the supreme court has fixed anew the prisoner's bail. The evidence objected to should have been excluded only upon the

ground that the complaint is insufficient. The authorities cited by defendants are inapplicable to our statute.

3.   The defendants claim that the state did not prove that an order of forfeiture was made, but we do not agree with them. It was proved that an information was duly filed against Finch upon leave of court, charging him with the crime of burglary; that he failed to appear and answer the same; and, as appears from the court's minutes, the court thereupon ordered his bond forfeited. Section 2400 of the Penal Code provides in part: "If, without sufficient excuse, the defendant neglects to appear for arraignment or for trial or judgment, or upon any other occasion when his presence in court may be lawfully required, or to surrender himself in execution of the judgment, the court must direct the fact to be entered upon its minutes, and the undertaking of bail, or the money deposited instead of bail, as the case may be, is thereupon forfeited." This statute seems to have been sufficiently complied with.

4.   The defendants attempted to interpose an affirmative defense alleging that more than thirty days elapsed after the delivery of the complaint, warrant and other papers filed in the justice's court to the clerk of the district court, and prior to the time the county attorney filed his information. On motion of the county attorney this so-called defense was stricken out. During the trial the defendants offered an instruction by which they sought to cover this feature of the case, but the court refused it.

Section 1730 of The Penal Code provides: "When the defendant has been examined and committed, or admitted to bail as provided in this code, or upon leave of court, the county attorney must, within thirty days after the delivery of the complaint, warrant and testimony to the proper district court, or after such leave, file in such court an information charging the defendant with the offense for which he is held to answer, or any other offense disclosed by the testimony. In case the county attorney fails to file the information within the time specified

he is guilty of contempt, and may be prosecuted for neglect of duty as in other cases."

It was held in *State* v. *Smith,* 12 Mont. 378, 30 Pac. 679, that the failure of the county attorney to comply with the statute in this regard must be taken advantage of by the defendant by motion to set aside the information, and this must be done prior to demurrer or plea. If not so taken advantage of, the irregularity is waived. When the county attorney, upon leave of court, filed an information against Finch, it was obligatory upon the latter to appear for arraignment under the terms of his undertaking, and he could then have taken advantage of the irregularity, or waived it, as he might have been advised. The negligence of the county attorney in this respect cannot aid the defendants.

5.  Defendants asked the court to instruct the jury that if they found "that, although all the other requirements of the law were complied with, still if the magistrate did not make and sign an order for the release of James E. Finch, his release, if he was released, was unlawful, and the defendants cannot be held liable on the bond." It seems that the magistrate did not make a written order releasing Finch.

Section 2354 of the Penal Code provides: "Upon the allowance of bail and the execution of the undertaking, the magistrate must, if the defendant is in custody, make and sign an order for his discharge, upon the delivery of which to the proper officer, the defendant must be discharged."

This section contemplates that, when the bail is given, the prisoner shall be discharged. The two points aimed at are securing the bond and releasing the prisoner. The intermediate steps are merely directory. An oral order of release given by the magistrate to the officer who has charge of the prisoner is a sufficient compliance with the statute so far as the prisoner and his sureties are concerned, although it shows a neglect of the statutory formalities by the justice which is far from commendable. If anything more is necessary, the prisoner and sureties cannot take advantage of it. The Supreme Court of California

held substantially to this effect in construing Section 1281 of their Code, which is identical with our Section 2354. (*City and County of San Francisco* v. *Randall*, 54 Cal. 408. And see *Dilley* v. *State*, 3 Idaho 285, 29 Pac. 49.) It reasonably appears that the justice gave an oral order to the sheriff to release Finch, and it further appears without any doubt whatever that Finch was released solely because the undertaking in question was given, and the order made.

6. By way of defense the defendants pleaded that long prior to June 24, 1901, the day on which the bond was declared forfeited, Finch died. This the state denied. In support of this defense the defendants placed a witness upon the stand who testified that he had known Finch, who was about 60 years of age, for 18 or 20 years. Then this question was asked: "You may state what was his reputation in the neighborhood in which he lived, among his neighbors, as to his being sane or insane." This was objected to as incompetent, immaterial and irrelevant, and the objection was sustained.

The evidence solicited was clearly incompetent. It is not permissible to prove insanity by reputation. Even so, it does not appear what relevancy his sanity bore to the issue. It was not pleaded that Finch was insane, but that he was dead. It may be that counsel for defendants saw, or thought they saw, some connection between Finch's alleged insanity and his attempts at suicide, for the next question asked the witness was, "Do you know of Mr. Finch ever having attempted to commit suicide?" The answer was in the affirmative, the witness saying, "To the best of my recollection, it was in the summer of '84," and "a year or two later than that he attempted to take his life the second time." This testimony was stricken out, on motion of the county attorney, "as being too remote from the 24th day of June (1901), and as incompetent, irrelevant and immaterial." The court's ruling was correct. The evidence called for was, in any view, wholly immaterial.

Defendants then offered to prove "the following circumstances as tending to prove the death of James Finch: That

he was an old man; that on two or three occasions he attempted suicide, and would have committed suicide if he had not been prevented by the interposition of other persons; that he lives in a place, the surroundings of which are such that a body might lay [sic] for weeks, months and even years without discovery; and that he has never been seen nor heard of since about a week prior to the forfeiture of the bond, and that no trace has ever been found of him by the sheriff or any of his deputies, or any other person." The offer was denied, and correctly. Finch disappeared about the middle of June, 1901, and this case came on for trial on November 20th following. Approximately five months only had elapsed. Finch was charged with felony, and, if found guilty, would have been sentenced to a term in the state prison. The offered testimony did not even remotely tend to show that Finch was dead at the time he was required for arraignment. No such remote and unsupported circumstances as these can be allowed for the purpose of relieving the bondsmen of their burden. Any other rule would make the collection of forfeited bail bonds almost impossible. It is well to remember that seven years is fixed by statute as the time when one is presumed to be dead if he has not been heard from within that period. (Code of Civil Procedure, Sec. 3266, Subd. 26.)

7. We have carefully examined the instructions given, as well as those refused, and do not find any error of which defendants may complain.

We are of the opinion that the judgment and order should be reversed, and the cause remanded for a new trial.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause is remanded for a new trial.

MR. CHIEF JUSTICE BRANTLY, not having heard the argument, takes no part in this decision.