# SUPREME JUDICIAL COURT,

### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1871, AT PITTSFIELD.

——

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR., ⎫
HON. SETH AMES, ⎬ JUSTICES.
HON. MARCUS MORTON, ⎭

---

## COMMONWEALTH vs. ROBERT DOUGHERTY.
## SAME vs. SAME.

The sexton of a church building, who is charged with the care of it and the duty of conducting funerals therein, may lawfully remove from it an undertaker, who, after being warned to desist and leave, persists in conducting a funeral there in violation of rules prescribed by the authorities of the church to maintain order and prevent interference with other religious exercises.

A rule of a Roman Catholic burial ground prohibited undertakers from officiating at funerals there without appointment of the pastor of the church, who held the fee in the land. An undertaker officiated at a funeral there in violation of the rule, and as he was rising from his knees, at the end of the service, the keeper of the burial ground, who had charge, by another rule, of all gatherings of persons in it, struck him on the shoulder, reminded him of the rule and that he had been expressly forbidden by the pastor to conduct a funeral there, and forbade his proceedings Upon a complaint against the keeper for an assault and battery consisting in the blow, the jury found him guilty. *Held*, that this court could not hold, as matter of law that the finding was not warranted by the facts.

TWO COMPLAINTS to the district court of central Berkshire, for assault and battery of John McCarthy; the first offence averred to have been committed in a church building, and the second in a burial ground. The defendant was found guilty on both, and appealed. At the trial of the first complaint, in the superior court, on the appeal, before *Reed*, J., there was evidence of these facts :

The defendant was sexton of the Roman Catholic church building in Pittsfield, and in that capacity had charge of the building and of the conduct of funerals in it. He was also an undertaker. It was the rule concerning funerals in the building, that the priest or the sexton should be informed of the death, and of the desire of the friends of the deceased that funeral services should be performed there; upon receiving such notice, either the priest or the sexton would fix a time for such services, to avoid interference with the other exercises of the church ; and it was the sexton's duty to take charge of the funeral procession, when it reached the door of the building, and to precede the bearers of the corpse up the aisle, superintend the deposit of the bier in the place provided for it, seat the mourners, and then, if the priest was not present, call him.

On Sunday, May 17, 1870, at the close of a religious service in the building, and after the congregation had been dismissed, but while some of them were lingering at prayer within the building, John McCarthy, an undertaker who had recently set up in business in Pittsfield, came to the building in charge of a funeral of which no previous notice had been given, and attempted to enter and perform the duties of the sexton in regard to it. Upon McCarthy's arrival at the vestibule, the defendant, who was seated at a desk within the door, forbade him to proceed with the funeral in the building. But McCarthy persisted in his attempt, marched up the aisle with his procession, and was directing one Tim Powers where to put the bier, when the defendant " came down the aisle, and told him to go out of the church, and forcibly removed him, but without more force than was necessary to eject him from the building."

Upon these facts the defendant requested a ruling that he was entitled to an acquittal, which the judge refused, whereupon by

consent of the defendant a verdict of guilty was returned and the case reported for the revision of this court.

*T. P. Pingree & J. M. Barker*, for the defendant. The facts justify the defendant. As sexton in charge, it was his duty to keep order in the building, and enforce the rules established for its use and for the government of persons entering it. No license is shown authorizing any person to enter or remain in it except on compliance with the rules. McCarthy entered in violation of them, not as a mourner or worshipper, but in the exercise of his trade, and persisted in remaining and violating them after he had been forbidden and been told to leave. It then became the defendant's duty to remove him, and he performed it without unnecessary force.

Any person lawfully in possession of a building, for himself or as the agent or servant of the owner, may, after requesting a stranger to withdraw from the premises, use force to remove him, if he neglects or refuses to leave. *Commonwealth* v. *Clark*, 2 Met. 23, 25. *Commonwealth* v. *Power*, 7 Met. 596. Com. Dig. Pleader, 3 M. 16, 17. *Weaver* v. *Bush*, 8 T. R. 78. Even if the premises are *quasi* public in their nature, the person in charge will be justified in removing therefrom by force any one who fails to conform to the reasonable rules of the place, persists in violating them after notice, and refuses to leave upon request. *Commonwealth* v. *Power*, 7 Met. 596. And it is a complete justification for an assault, to show that the defendant did the acts complained of in removing one who was disturbing a parson conducting a funeral or religious meeting. Com. Dig. Pleader, 3 M. 17. It seems that, by the common law, any person might lawfully use force to remove one who was disturbing a funeral or religious ceremony, or exercising his trade in a church building. *Glever* v. *Hynde*, 1 Mod. 168.

It is evident from the report, that the defendant was acting in what seemed to be the duty of his position, and not merely undertaking to assert his own rights; and therefore that the main element of crime, an unlawful intent, was wanting. *Commonwealth* v. *Presby*, 14 Gray, 65. *Commonwealth* v. *Rigney*, 4 Allen, 316.

*C. Allen,* Attorney General, for the Commonwealth. The defendant forcibly ejected from a church building one who was conducting a funeral therein. This constituted an assault and battery, unless there was a justification for it. It was also a ciiminal act at common law, as disturbing an assembly for the burial of the dead. 1 Bishop Crim. Law (4th ed.) § 982. And it was in violation of the statute against wilfully interrupting or in any way disturbing a funeral assembly or procession. Gen. Sts. *c.* 165, § 24. It is certainly a great aggravation of the offence of assault and battery, if it is committed at a funeral, where mourners for the deceased are affected by it. The assembled congregation cannot be supposed to have investigated the respective rights of rival undertakers. Accordingly, in such a case, an assault upon any one is a grave offence, and is not excused by a prior assault by him upon the defendant. 1 Russell on Crimes (4th ed.) 416. *A fortiori,* an assault upon one who is actually conducting a funeral must be so shocking to the mourners and congregation as hardly to admit of excuse.

In the present case, nothing is open to the defendant, except to urge that, on the facts recited in the report, there was no aspect of the case in which the jury could properly return a verdict of guilty. And upon those facts the following considerations are submitted, for the Commonwealth :

1. Being in charge of a church building does not authorize a sexton to determine whether a funeral shall be held there or not. The sexton's authority, as such, does not relate to matters of this kind, but rather to the care of the building as to sweeping, dusting, warming and lighting. There is nothing reported in this case, and nothing in the manners, usages or traditions of the people of Massachusetts, or in the known rules of the Roman Catholic Church, which gives a sexton, as such, the right to forbid funeral services for a church member from being conducted in the church building where he worshipped.

2. It is said that this sexton had the conduct and charge of funerals in the building. This may mean that he usually had , or that he had whenever he was called upon. It does not mean that he had an exclusive right to conduct the funerals there. It

is also said that "the rule was" for previous notice of funerals to be given; but it does not appear what was to be done if this rule was not complied with. There is nothing to show that, in such an event, the sexton might interrupt, disturb and put an end to the funeral. If this rule is violated, is the sexton thereupon at liberty to break in upon the funeral with a brawl; or should he more properly report the facts to the priest? Who has the authority to dispense with this rule, or to decide what is to be done if it is not complied with? In what system of church discipline is it provided that this authority resides in the sexton?

3. It is said that, on the arrival of the funeral procession at the church, it was "the duty" of the defendant to take charge of it. This means, it was his duty if called upon to do so. The duty was imposed upon him for the benefit of the mourners, not as a means of annoyance to them. They had a right to his services; or they might dispense with them. But he had not the exclusive privilege of walking at the head of the funeral procession, against the wishes of the mourners.

4. No question arises in this case as to the authority of the priest; nor is it to be assumed that he sanctioned or knew of the proceedings of the defendant. The priest may have been willing and ready to conduct the religious exercises.

5. In any reasonable aspect of the case, the facts fail to show any necessity for removing McCarthy from the building. Can the court perceive, as matter of law, that this necessity existed? On the other hand, so far as appears, even assuming that McCarthy was properly deprived by his rival undertaker of the opportunity of conducting the obsequies, yet the melancholy satisfaction of witnessing them might safely have been conceded to him.

Morton, J. It appeared at the trial, that the defendant was the sexton and person in charge of the church, and that it was his duty to take charge of and conduct funerals at the church. The complainant McCarthy had no right to insist upon conducting a funeral there in violation of the rules prescribed by the authorities of the church to maintain order and prevent interference with other religious exercises. The facts show that he did so,

and that, upon being requested to desist and leave the church, he refused, and persisted in his unauthorized intrusion. We think the defendant, being in charge of the church, upon such refusal, had a right to remove him; and as the facts find that in so doing he used no more force than was necessary, he was not guilty of an assault and battery. The jury should have been instructed, as requested by the defendant, that upon the facts shown at the trial he was entitled to an acquittal.                    *Verdict set aside.*

At the trial of the second complaint, in the superior court, also before *Reed*, J., the following facts appeared:

The fee of the Roman Catholic burial ground in Pittsfield was in Edward H. Purcell, the pastor of the church of St. Joseph in Pittsfield; and he had established certain rules for its use, the tenth and eleventh of which were as follows:

" *Tenth.* The conduct and charge of all funeral processions and gatherings of persons in and upon the grounds of said cemetery shall be in the person appointed for that purpose by the pastor of the church of St. Joseph in Pittsfield, and strict obedience to his requirements is demanded and will be enforced.

" *Eleventh.* Undertakers, and all other persons having charge of a funeral or burial, before entering upon the cemetery grounds, will notify the person in charge of the cemetery of the time such burial will occur. In the cemetery all arrangements therefor will be made, and the charge of such funeral received at the entrance of said cemetery, and no undertaker or other person than the pastor or his appointees will be permitted to officiate in any way or matter upon the grounds."

The defendant was the person appointed by Father Purcell under the tenth rule, and had charge of the burial ground.

Licenses for lots were granted by Father Purcell in a form certifying that the licensee was entitled to the use of one burial lot of specified dimensions, subject to the rules for the use of the burial ground, and on condition that persons dying drunk or unbaptized, or otherwise opposed to the Catholic Church in the opinion of the Roman Catholic bishop of Boston, should not be entitled to observance of the license.

At the funeral (described in the first case) which the under-taker McCarthy was conducting, he " entered the burial ground with the corpse, under this usual license, and there conducted the funeral ceremonies, and, as is usual on such occasions with Roman Catholics, gave thanks and made prayers at the close." As Mc-Carthy was rising from his knees and putting on his hat, the defendant, " coming up to object to his presence and actions in conducting the funeral on the cemetery grounds, struck him upon the shoulder, and objecting that he was not permitted to go there as undertaker with a funeral, and that Father Purcell had previously thereto forbidden him to take charge of a funeral at the cemetery, refused to permit him to officiate thereat in the cemetery."

Upon these facts (as in the first case) the defendant requested, and the judge refused, a ruling that the defendant was entitled to an acquittal; whereupon by consent of the defendant a verdict of guilty was returned and the case reported to this court.

*T. P. Pingree & J. M. Barker*, for the defendant. The license, under which alone the funeral was allowed in the burial ground, was given subject to rules which were broken by McCarthy's presence and conduct up to the time of the defendant's act. McCarthy knew the rules and was deliberately violating them ; for he had been expressly forbidden by Father Purcell to take charge of a funeral at the cemetery. He must therefore be considered as a trespasser persisting in the trespass after having been forbidden by the owner. The defendant, therefore, as the person in charge of the grounds and bound to enforce the rules, was justified in removing him from the cemetery by force. See cases cited in argument in the first case.

The report finds that the defendant's intention in coming up to McCarthy was to object to his presence and actions. The striking upon the shoulder does not appear to have been anything more than was necessary to attract his attention ; and it is a fair inference that it was but the beginning of a justifiable attempt to remove him from the grounds. Whether the defendant then desisted of his own accord, or was overpowered or prevented by bystanders, is immaterial. The decisive question is, whether the

blow was disproportionate or unnecessary, considering the object to be effected. The burden is upon the Commonwealth to show that it was so; and there is nothing from which such an inference can be drawn.

If it is urged that no request to leave is shown, previous to the blow, it is to be considered that a previous request is unnecessary in some circumstances, as where a man enters *vi et armis*, or breaks in at a gate; *Green* v. *Goddard*, 1 Salk. 641; and that McCarthy's entry, having been forbidden, was wilful, and would justify his removal without such a request.

If the facts do not demonstrate the absence of an unlawful intent on the part of the defendant, they at least put the question in so much doubt that the Commonwealth cannot be said to have sustained the burden of proof required to entitle the verdict to stand.

*C. Allen*, Attorney General, for the Commonwealth. The defendant struck McCarthy at a stage of the proceedings at which there was no excuse for using personal violence. Any discussion of the defendant's rights and privileges in the conduct of funerals in the burial ground, in instances in which he asserts them seasonably, is therefore needless.

MORTON, J. We cannot say, as matter of law, that the verdict of the jury was erroneous. It appeared at the trial, that, after McCarthy had concluded the funeral services, the defendant struck him on the shoulder. It does not appear that this was for the purpose of removing him from the cemetery. If it be admitted that the defendant had the right to remove McCarthy, it does not follow that this assault was justifiable. It was for the jury to decide whether the force used by the defendant was used for the purpose of removing him, and whether it was reasonable in kind and degree. Both of these questions were within the province of the jury to determine, and we cannot revise their finding thereon. *Judgment on the verdict.*