BENJAMIN F. BRADDY and wife v. R. T. HODGES.

*Arrest—Resistance to Officer—Force in defence of Property— Trespass—False Imprisonment.*

1. The rule that one may rightfully use such force as may be necessary for the protection of his person or property is subject to the modification that he shall not, except in extreme cases, do great bodily harm or endanger human life.

2. This general rule is much more restricted when the force is attempted to be employed in the protection of property which is sought to be seized by an officer armed with legal process.

3. Where an officer having in his hand a requisition duly issued commanding him to seize certain property was violently assaulted with a deadly weapon by a person not a party to the action who was in possession and claimed the property in controversy, took the property described in the requisition, arrested the assailant, carried her forthwith to the jail and confined her therein until he could procure a warrant for her arrest, using no more force than was necessary therefor; *Held,* that he had not exceeded his authority.

This is a CIVIL ACTION, which was tried before *Avery, J.,* at February Term, 1887, of BEAUFORT Superior Court.

There was a verdict for the defendant, and from the judgment rendered thereon the plaintiffs appealed.

The plaintiffs, Benjamin F. Braddy and wife Wealthy, bring their action against the defendant Robert F. Hodges, Sheriff of Beaufort County, to recover compensation in damages for an alleged unlawful arrest and imprisonment of the *feme* plaintiff by one M. J. Fowler, his deputy, in which the defendant after the arrest personally participated. The defendant denies the cause of action set out in the complaint and avers that the arrest and temporary detention were in the exercise of lawful authority.

Upon issues eliminated from the pleadings and submitted to the jury, they find in substance that both the arrest

by the deputy and the imprisonment in the county jail were lawful, and that the deputy did not purposely or maliciously use more force than was necessary in making the arrest or detaining the said Wealthy in custody. Judgment being rendered upon the verdict the plaintiffs appealed.

Upon the trial it appeared that one Mary Singleton, in a civil action instituted against John H. Archbell on April 5th, 1886, and supported by her affidavit in the required form, sued out a requisition directed to the Sheriff and commanding him to take from said Archbell a certain hog and deliver it to the plaintiff Mary Singleton, and in the execution of this order, placed in the hands of the deputy, the arrest was made.

It is only necessary to state such of the testimony as relates to the arrest and detention, and that of the *feme* paintiff was to this effect:

"Fowler came to the door, pulled out some papers, pushed them at Archbell and asked where was that hog." Witness told him it was not Archbell's but hers; he then went to the pen and witness followed with the pistol; he ordered a darkey to take the hog; he pushed witness and witness pushed him; he ordered Gordon to take hold of witness who held up the pistol in her left hand to shoot the hog, then being lifted up; he ordered Gorden to take hold of witness, but did not get the pistol away until Fowler helped him; Fowler took witness by one hand and pulled witness with the other to the gate; he took witness to jail; Hodges came and witness was carried to jail and he kept her locked up in a room up stairs for about an hour, when she was removed to the court house; her arm was bruised and she rendered nervous, from which she has not yet recovered.

The deputy Fowler testified, that having the warrant he called at the house and told Archbell he had come after the hog, who answered "you can't get him." Thereupon Mrs.

Braddy came out and swore that witness should not have him. She was very angry. Witness went to pen, and she drew a pistol and presented it at witness cocked, loaded and capped. She presented it at him, but did not advance. Witness grabbed her and wrenched the pistol out of her hand, and told her she would have to go before Justice Wilkinson. She pulled back and cursed violently. Then he brought her to jail and delivered her to the Sheriff, who locked her up in the debtors' room for about a half hour. He acted in good faith, employing no more force than was necessary in overcoming her resistance, in doing which and in wresting the weapon from her hand, which had to be quickly done, he may have sprained her wrist. That morning Archbell had claimed the hog, and was advised by witness to give him up.

*Mr. W. B. Rodman, Jr.*, for the plaintiff.
*Messrs. Geo. H. Brown, Jr.*, and *J. H. Small*, for the defendant.

SMITH, C. J., (after stating the case). We cite from the evidence given by the parties as to what occurred and omit that of others, which is mainly corroborative, so that it may be seen how, upon its different aspects, the jury were instructed, and the pertinency and correctness of the law given in the charge.

After the seizure of the hog under the warrant, the exhibits accompanying the proceeding show an affidavit made by Archbell disclaiming property in the hog, and another made by the *feme* plaintiff asserting her right thereto, upon the submission of which, at her instance, she was substituted and made defendant in place of said Archbell, and the action thereafter proceeded against her. This is adverted to for the purpose of showing a method of redress open to her, if wrong, without a resort to a violent resistance to the officer, carried so

far as to put his life in apparent peril. We do not find it necessary to enquire whether, in a precept directing the seizure of a specific article of property, the title to which is in dispute, and which is taken into custody under judicial mandate for its preservation pending litigation, and for surrender to the party who shall thereafter be shown to have the title, can be lawfully resisted by one upon his assertion of ownership, and who may turn out to be the owner, since, if this right did exist, it has limits which have been greatly exceeded by the *feme* plaintiff's conduct, and she has made herself an aggressor.

Assuming that the hog belonged to the *feme* plaintiff, and that she, and not Archbell, were in legal possession at the time, it was under a claim of property, asserted under the law by the said Mary Singleton, and the deputy was doing what the writ commanded him to do in making the seizure, when the *feme* plaintiff encountered him at the pen, and, as the deputy testifies, in great anger swore that he should not get the hog, and at the same time presented a pistol, cocked, loaded and capped, at him, thus endangering his life; and then it was that her person was seized, she resisting, and carried to jail, and a warrant of arrest obtained. The officer could not do less, under the circumstance, nor can he be held civilly liable for doing thus?

It is not an attempt to take the property from her person, but in her presence and in obedience to the process in his hands, and there are reasonable limits within which force may be exercised in defence of property, even when one with no authority attempts to get possession, and they must be narrower in case of an officer armed with legal process, and certainly life cannot be taken or put in great peril in resisting the seizure.

The law is very clearly stated by GASTON, J., in these words: "When it is said that a man may rightfully use as much force as is necessary for the protection of his person or

property, it should be recollected that this rule is subject to this most important modification, that he shall not, except in extreme cases, *endanger human life or do great bodily harm.*"

And again : " So it is clear that if one man deliberately kills another to prevent a mere trespass on his property— whether that trespass could or could not be otherwise prevented—he is guilty of murder." *State* v. *Morgan*, 3 Ired., 186–193.

Our statute regulates proceedings to be had upon an arrest of one engaged in committing a breach of the peace, and this seems to have been strictly preserved, and without unreasonable delay. *The Code*, § 1130.

It must be declared that there is no error, and the judgment is affirmed.

Affirmed.