SHRIVER *v.* BEAN.

1. FIREARMS—ACCIDENTAL DISCHARGE—LIABILITY TO TRESPASSER. One who is rightfully in possession of property may lawfully arm himself for the purpose of intimidating trespassers, and hence the possession of a weapon will not, of itself, render him liable to a trespasser injured by its accidental discharge.

2. ASSAULT AND BATTERY—INTENT—INSTRUCTIONS. In an action for assault and battery by one who was shot while trespassing, where the defense was that the discharge of the weapon was accidental, it was error to charge that the intent must be proved by some credible witness, and by a preponderance of testimony, such statement being calculated to exclude the idea that the intent might be deduced from circumstances shown by different witnesses; especially if the testimony showed that defendant, almost simultaneously with the shooting, threatened to shoot the first man that laid a hand on his property, and the jury were instructed that the intent could not be inferred from a general threat, not relating to plaintiff, which defendant might have made "some time before the shooting took place."

Error to Berrien; Coolidge, J.   Submitted October 23, 1896.   Decided May 11, 1897.

Case by Charles W. Shriver against William Worth Bean for assault and battery.   From a judgment for defendant, plaintiff brings error.   Reversed.

This is an action to recover damages for assault and battery.   Plaintiff was an alderman of the city of Benton Harbor, and a member of the street committee.   The defendant was the president and general manager of the St. Joseph & Benton Harbor Street Railway Company, a corporation organized under the law for the purpose of constructing and operating a street railway.   An ordinance was passed August 17, 1892, granting to the railway company a franchise to extend its tracks over certain streets of the city.   It was required to construct and complete said tracks within 10 months from the date of the approval of the ordinance, "otherwise this ordinance to be null and void."   A portion of the track was constructed under this ordinance, but certain changes were considered desirable, and a second ordinance was passed and approved June 7, 1893, by which such changes were made.   This ordinance contained the same limitation as to time, and the same provision that it should become null and void upon failure to comply therewith.   The company did not complete the entire track within the time limited. So far as the track was laid, it was in compliance with the ordinance, and the space between the tracks was planked, as the ordinance required.

In the summer of 1894 the common council passed an ordinance for the paving of that portion of the street in regard to which the controversy arose out of which the alleged assault and battery grew.   The grade of the street was lowered, thus leaving the railway track higher than the rest of the street.   The council claimed the right to require the defendant company to lower its tracks and to pave between them with cedar blocks.   The company

denied this right. No complaint had been previously made against the company. The common council, on August 6, 1894, passed a resolution reciting that the company had failed to comply with the ordinance, and declaring that the company had forfeited its franchise, and that it be notified "to at once remove its track on east Main street from Pipe-stone street east to Sixth street." The city clerk was directed to serve a copy of the resolution upon the railway company. During that week negotiations were pending between the council and the railway company for a settlement. None, however, was reached. These negotiations were continued until the evening of August 11th.

On that evening plaintiff and the other two members of the street committee made arrangements for the removal and destruction of the track on the following Sunday morning between 4 and 5 o'clock, and for that purpose engaged 20 or more laborers, and assembled the policemen of the city to assist them. The defendant and one Mason, superintendent of the road, learned late that evening of this proposed action. Defendant thereupon notified a deputy sheriff, and on the following morning went, with this officer and some employés of the road, in a motor car, to the place. They had armed themselves with two shotguns and some revolvers. When they arrived at the scene, plaintiff and his party had commencd their work. Both defendant and the deputy sheriff ordered them to desist. They refused. Thereupon defendant stepped from the car, and commenced to throw off the blocks which plaintiff and others of his party had thrown upon the track. They were thrown back as fast as removed. Defendant then returned to the car, and he and Mason came out upon the platform, each with a shotgun in his hand. There was a dispute in the testimony as to what was said. It is the province of the jury to determine which version was correct, and we need not consider it. While plaintiff was proceeding with his work a few feet from the car, the gun in the hands of the

defendant was discharged, the main charge taking effect upon the platform of the car, but two ,of the shot, or pieces of shot, struck the plaintiff, one in his hand and the other in his leg. The jury found for the defendant. The further facts, so far as material, will be referred to in the opinion.

*Victor M. Gore,* for appellant.

*M. L. Howell, W. C. Hicks,* and *A. P. Cady,* for appellee.

GRANT, J. (*after stating the facts*). Counsel for the plaintiff argues (1) that the plaintiff, acting for the city, had the right to remove the track for the purpose of paving the street; and (2) that, if he had not, still the defendant had no right to use a shotgun to prevent its removal. Counsel for the defendant argue (1) that plaintiff was not acting for the city, nor under authority conferred by it; (2) that the defendant had the right to resist the plaintiff and the others with sufficient force to prevent the accomplishment of their purpose. The question of intentional shooting has been disposed of by the special finding of the jury that the discharge of the gun was accidental. This finding removes from the case the question whether defendant had the right to intentionally shoot at the plaintiff or others in order to protect the property of the company, and prevent its destruction. Neither need we discuss the question whether the city, acting through its proper body, the common council, could remove the track without taking legal proceedings, upon the ground, as claimed, that the failure to comply with the ordinance operated *ipso facto* as a forfeiture of the franchise granted. It is contended on the part of the defendant that the failure to construct the track along the entire line was the fault of the common council, and not of the railway company, in that the delay was requested by the city for the reason that the street was not in condition. The resolution of forfeiture was passed

August 6, 1894. Counsel for the plaintiff does not point to any testimony in the record showing that a copy of such resolution was served upon the railway company, and we have been unable to find any. It is clear that, before proceeding to act under that resolution, notice thereof should have been served upon the railway company, and that it should have been given a reasonable time to comply therewith.

Plaintiff was acting without any authority from the council. No record of any action by the council was shown directing him or the street committee to take up this track. Even the street commissioner, who has general charge of the streets, can perform only such work as the council shall direct to be done. 1 How. Stat. § 2489. If it should be found upon judicial determination that the destruction of the property was illegal, would the city be liable in damages? The answer to this question depends upon whether plaintiff was acting under the authority of the city. The common council can act only by resolution or ordinance duly passed, and found in its record. A municipality is not responsible for the acts of its officials unless they are acting within the scope of their authority. The common council had done no more than to declare the franchise forfeited upon the street in question, and had directed the company to remove its track upon being properly notified. No power is anywhere found in the statute authorizing the street committee to assume that the railway is a nuisance, and an obstruction, and to proceed to remove it by force without instruction. They have no more right to do it than would private citizens living along the street. The municipality had not authorized such action, and was not responsible therefor.

Plaintiff was the promoter of, and was engaged in, an unlawful assembly, and was acting in violation of 1 How. Stat. § 2015, prohibiting work on the first day of the week. His sole purpose in so doing was to prevent the railway company from appealing to the courts to protect its rights. No process can be issued or

served upon that day. The courts are then closed to the citizen. 1 How. Stat. § 2019; 2 How. Stat. § 7250. Such conduct is not only unlawful, but is unjustifiable, in that it attempts to deprive a party of the process of the court to prevent the destruction of his property until it shall be judicially determined that such right exists. Citizens have the right to assume that the laws of the State will be respected, and that their property will be protected from wanton destruction on the day when the courts are closed to them. Such attempts to substitute force for orderly judicial methods are wrong in both law and morals, and cannot be too severely condemned.

This is not a proper case in which to determine the legal rights of these parties. The railway company was in possession of its property, and using it. He who claims the right to invade this possession must first have that right determined by the courts. He cannot resort to force. In *Iron Mountain, etc., R. Co.* v. *Johnson,* 119 U. S. 608, Johnson was in the actual and peaceable possession of 18 miles of railroad, which was built by him for the company, and was running his own locomotives over it. He claimed the right of possession. The company disputed it, and ejected him by force. The court used this language:

" The party so using force and acquiring possession may have the superior title, or may have the better right to the present possession, but the policy of the law in this class of cases is to prevent disturbances of the public peace, to forbid any person righting himself in a case of that kind by his own hand and by violence, and to require that the party who has in this manner obtained possession shall restore it to the party from whom it has been so obtained; and then, when the parties are in *statu quo*, or in the same position as they were before the use of violence, the party out of possession must resort to legal means to obtain his possession, as he should have done in the first instance."

This doctrine was sustained by *Denver, etc., R. Co.* v. *Harris,* 122 U. S. 597, and the court in that case said:

"The courts of the territory were open for the redress of any wrongs that had been, or were being, committed against the defendant by the other company. If an appeal to the law, for the determination of the dispute as to right of possession, would have involved some delay, that was no reason for the employment of force; least of all for the use of violent means under circumstances imperiling the peace of the community and the lives of citizens. To such delays all—whether individuals or corporations —must submit, whatever may be the temporary inconvenience resulting therefrom."

See, also, *Appeal of Easton, etc., R. Co.*, (Pa. Sup.) 19 Atl. 486.

It follows that the plaintiff was engaged in an unlawful work, in an unlawful assemblage, and was a disturber of the peace. The police of the city, instead of being present to protect plaintiff in his unlawful acts, should have prevented them. The controversy is one which should have been disposed of in the usual and orderly manner by judicial proceedings. The jury has determined that the shooting was accidental, and that the defendant intended no injury to the plaintiff. If the plaintiff in such case was roughly handled and injured while engaged in an unlawful act, the law has no particular tenderness for him, and will not give him damages for the injury received. *Galbraith* v. *Fleming*, 60 Mich. 403; *People* v. *Pearl*, 76 Mich. 211 (15 Am. St. Rep. 304). The deputy sheriff was authorized by law to prevent the accomplishment of the illegal act, and plaintiff should have desisted when so warned by him.

Under this view of the case, I think there was no prejudicial error in the instruction of the court.

The judgment should be affirmed.

MONTGOMERY, J. The facts are stated in the opinion of Mr. Justice GRANT. I concur in the conclusion reached by him that the plaintiff and his associates were committing an unlawful act in attempting to pull up the track of the street railway company in the manner in which they did; and, as the jury has found that the dis-

charge of the gun in the hands of the defendant was accidental, but two questions need be considered: *First*, whether the fact that the defendant had a gun in his possession at the time, without any intention of using it to inflict great bodily harm upon the plaintiff, makes him responsible for the results of an accidental discharge; *second*, whether error was committed in that portion of the charge which dealt with the question of the defendant's intention.

1. In the case of *Denver, etc., R. Co.* v. *Harris*, 122 U. S. 597, the plaintiff recovered for injuries received while defending property of the Atchison, Topeka & Santa Fé Railway Company, in whose employ he was, and the court assumed that, notwithstanding the fact that he was armed with a gun, this did not preclude a recovery. This holding necessarily involved the proposition that the possession of firearms by one lawfully in possession of property, made use of for the purpose of intimidating trespassers, is not, of itself, unlawful. This being so, an accidental injury, caused while doing a lawful act, does not, generally, create a liability. See *Brown* v. *Kendall*, 6 Cush. 292.

2. The circuit judge charged the jury as follows:

"I have said to you that the defendant would not have been justified in shooting—that is, in killing—the plaintiff, or attempting to kill him, or any other person present, but, if he had killed the plaintiff, he would have been guilty of manslaughter. But, of course, gentlemen, you will be cautious, and scrutinize the evidence in regard to this branch of the case. You cannot infer that the defendant intended to kill the plaintiff from the mere fact that a portion of the contents of the gun were found upon the person of the plaintiff, nor can you infer it from some general threat, not relating to the plaintiff, which he may have made some time before the shooting took place. It is just as necessary to prove the intent as it is to prove any other fact in the case. The question of intent is a question of fact, and, in order to find that the defendant intended to shoot the plaintiff, you must find that that intent has been proved by some credible witness in the case, and by a preponderance of testimony."

There was testimony on the part of the plaintiff tending to show that when the defendant came out of the car, with the gun in his hands, he threatened to shoot the first man that laid a hand on his property. We think, in view of this testimony, that the instruction as given was erroneous. The statement that the intent must be "proved by some credible witness in the case, and by a preponderance of testimony," was calculated to exclude the idea that it might be deduced from circumstances shown by different witnesses; and this error is emphasized by the statement to the jury that it could not be inferred that the defendant intended to kill the plaintiff, from some general threat, not relating to the plaintiff, which he (defendant) may have made some time before the shooting took place. The force of this testimony was for the jury, and the threat referred to was one made immediately preceding the shooting,—almost simultaneous with it, as the testimony would indicate; and from these facts the jury might have been justified in drawing the inference that the defendant intended the consequences of his act. It is true, the defendant's own testimony, and that of some of his witnesses, disputed the alleged threats, and also tended to show that the act was accidental; but, under this instruction, the testimony of the plaintiff upon this subject was practically withdrawn from the jury.

The judgment should be reversed, and a new trial ordered.

LONG, C. J., HOOKER and MOORE, JJ., concurred with MONTGOMERY, J.