165 P.2d 122

## STATE v. WAGGONER.
### No. 4906.

Supreme Court of New Mexico.

Jan. 3, 1946.

J. Benson Newell, of Las Cruces, for appellant.

C. C. McCulloh, Atty. Gen., and Thos. C. McCarty, Asst. Atty. Gen., for appellee.

MABRY, Chief Justice..

Appellant, Dick Waggoner, was charged, and convicted, upon trial to jury of the crime of assault with intent to kill, 1941 Comp., Sec. 41-607, by discharging a pistol at one J. W. Harper, Jr., and he appeals. Appellant had leased a ranch from one Mrs. Cox who thereafter lived with him and his wife on the Cox property. Mrs. Cox had borrowed a water tank from a neighbor, one Sam Swope, her son-in-law, appellant bringing the tank from the Swope ranch and connecting it to the windmill on the Cox property. He used some of his own fittings, of small value,

to make the connection with the well, and the water conveyed to the tank was used by both families at the Cox place for domestic purposes and for watering a small number of Waggoner's livestock on the place.

Thereafter Swope sold his ranch to one Jack Prather and J. W. Harper, Jr., the last named being the prosecuting witness. Waggoner was advised that the tank which Mrs. Cox had borrowed for his and her use at the Cox ranch went to the purchasers of the Swope ranch. Harper, one of the purchasers, saw Waggoner and told him he wanted to get the tank and advised that he was later coming for it. Prior to Harper's coming for the tank there was some discussion as to whether he should get Mrs. Cox's permission to remove it since she herself had borrowed it from the Swope ranch. It appeared that appellant may not have been willing to give up the tank until the permission of Mrs. Cox, the borrower, should be granted. In any event, as subsequent developments disclosed, he was not ready to release, or return, the property when Harper wanted it.

Harper and a neighbor thereafter went to the Cox place, disconnected the tank from the windmill, "rolled it out to the fence and across it," off the premises and into the highway and were in the act of loading the tank on the back of his pickup truck when Waggoner approached, began calling to him and fired at him, the bullet passing through Harper's hat.

Seven assignments of error are made, as follows:

1. The court erred in refusing to instruct the jury to acquit defendant upon the close of state's case.

2. The court erred in refusing to admit testimony of witness for defendant, Mrs. Ellis Wright.

3. The court erred in refusing to admit testimony of defendant's witness Mrs. Virgie Smith.

4. The court erred in ruling out testimony of defendant of conversation with Mrs. Cox, owner of the ranch.

5. The court erred in ruling out proffered testimony of Mrs. Wright and Mrs. Smith at close of case.

6. The court erred in refusing to give defendant's requested Instruction No. 1.

7. The court erred in refusing to give defendant's requested Instruction No. 3.

There is no merit to Assignment No. 1, based upon the court's refusal to instruct the jury to acquit defendant.

Without recounting the facts and circumstances of the assault in particular detail, we are prepared to say that there is ample showing of the elements of malice, unlawfulness, deliberateness and premeditated design and intent to take the life of the person assaulted, if the jury should choose to believe the state's witness, as it did; in other words, there was proof of every ingredient necessary to have constituted the crime of murder if death had

ensued. Territory v. Sevailles, 1 N.M. 119. There is no showing, if indeed there is a claim, that the prosecuting witness knew of the impending assault until the moment it occurred. And, there is no claim that appellant was facing any danger, threatened or otherwise, from Harper, apparently unaware until the moment of the assault, that appellant was armed and intended to so assault him.

■ There is likewise no merit to Assignments 2 and 3 whereby the court refused to admit certain testimony from Witnesses Wright and Smith which purported to relate the conversation with, or statement made by, Mrs. Cox prior to the time of the incident. Incidentally, Mrs. Cox died subsequent to the alleged assault and prior to the trial of this case. The testimony offered was to the effect that these two parties had a conversation with Mrs. Cox sometime prior to the time of the attempted removal of the tank and that she had told these witnesses that she didn't want anyone to take it away until Sam Swope, the owner of the tank, had settled with her, and that they had no right to take it. It was objected to as hearsay, irrelevant and incompetent, and the court appropriately sustained the objection.

■ Assignment No. 4, charging error because of the ruling out of certain testimony offered on behalf of appellant as to what Mrs. Cox had told him, is likewise without merit. The proffered testimony was purely hearsay. Appellant was enabled to show that he had been instructed by Mrs. Cox to get the tank from the Swope ranch and that he had gone for it and brought it to the Cox place, and any detailed conversation or statement beyond showing why he had gone for it or under what circumstances he got it from the Swope ranch would be unimportant, as well as inadmissible. Appellant was allowed to show under what circumstances he got the tank and how they all made use of it, i. e. he was enabled to explain what happened, but not to give any detailed and inadmissible conversation with the third party. And, moreover, the only objection interposed to the ruling out of that part of appellant's testimony is found in counsel's statement after objection was made and sustained on the ground that the conversation was hearsay. The statement, clearly not a proper objection, was: "Certainly it can't do any harm to anybody, it's just explaining why he happened to go for it." He urged no further objection at that time to the court's sustaining the non-admissibility of the details of the conversation with this third person.

Assignment No. 5 covers the same question raised by Assignments 2 and 3. At the close of the case, appellant had re-offered the testimony of Witnesses Wright and Smith. The court refused to admit it upon this second offer and exception was taken.

■ Assignment No. 6 is likewise without merit. Under this point appellant urges that the court should have given his instruction No. 1, which was as follows:

"Under the law of this state a person has a right to defend his property from

trespass or larceny by another. The statute [1941 Comp. § 41-2411] applicable to this case reads as follows:

" 'Any person who shall kill another in the necessary defense of * * * his property * * * shall be adjudged not guilty.'

"In this case the defendant is charged with assault with intent to kill. The elements of this crime are the same as in a murder charge; that is the state must prove to your satisfaction and beyond a reasonable doubt that the defendant in shooting at the prosecuting witness, if you believe he did so shoot, acted with malice and that it was done wilfully and unlawfully and that he intended to kill the prosecuting witness.

"So I charge you that if you believe the defendant fired the shot to prevent the prosecuting witness from taking property belonging to the defendant and that such shooting was necessary to prevent the prosecuting witness from taking same, then under such circumstances the defendant would be justified and you should acquit him."

The court refused this instruction as to part, but did give the following from the tendered instruction:

"I charge that if you believe the defendant fired the shot to prevent the prosecuting witness from taking property belonging to the defendant and that such shooting was necessary to prevent the prosecuting witness from taking same, then under such circumstances the defendant would be justified and you should acquit him."

And, the court also appropriately covered the question of what would constitute "assault with intent to kill" in the instructions given of its own motion.

Appellant's principal reliance seems to be upon this assignment. There is no evidence that the prosecuting witness was upon the Cox land, claimed to have been rented by appellant, at the time of the assault. The testimony of the prosecuting witness that he had disconnected the tank and that it had already been rolled "over" the fence into the "Dog Canyon right-of-way," when the shot was fired at him, is not contradicted. There may be some differences in testimony as to the distance appellant was from Harper when the shot was fired and as to what was said by the two, before and after, but even Waggoner himself says "the lot was between us" when he shot toward Harper, and he makes no point that the tank had not been removed from the premises at the time of the unprovoked assault. Since Harper had already removed the tank from its connection at the well and had it in the right-of-way at the time of the shooting, any instruction upon the law of trespass was uncalled for. Any trespass that may have occurred (and we do not undertake to say whether trespass was ever involved), in any event, had been committed prior to the time of the assault; and the court's instruction No. 6, hereinafter set out, was all, if indeed not more, than appellant could

have asked for upon the point of right to use force.

■ It is to be noticed in this connection that this instruction does not contain any qualifying limitation on the right of the owner to use force to protect, or recapture, his property. And this would certainly operate to the prejudice of the state rather than the appellant. Even if Harper had been a trespasser at the time of the assault, no trespass being threatened as against appellant's habitation, an attempt to take the life of the trespasser merely to recover property would not have been justified. The rule in this respect is well settled. See State v. Martinez, 34 N.M. 112, 278 P. 210; State v. Casad, 28 N.M. 117, 207 P. 64, and State v. McCracken, 22 N.M. 588, 166 P. 1174.

The instruction offered was vulnerable, therefore, from the standpoint that trespass upon the ranch was not involved at the time of the assault, and for the additional reason that the proffered instruction giving appellant the unrestricted right to shoot the prosecuting witness to defend the property in question should not have been given had trespass in fact been involved.

■ Instruction No. 3, upon refusal to give which appellant bases his 7th assignment of error, is likewise without merit. This instruction read:

"If you believe from the evidence that the defendant Dick Waggoner had the land upon which the tank was located leased at the time of the shooting referred to that he had a right to defend said property from trespass by the prosecuting witness, and this right extended to any pipe fittings belonging to the defendant attached to the tank in question, and if it was necessary to shoot the prosecuting witness to prevent trespass against said property by the said prosecuting witness such shooting would be justified and you should acquit the defendant."

The court in the stock instructions given covered sufficiently the appropriate statement of the law applicable. The jury was fully advised as to the right of one to defend his property from larceny by another.

We take the following language from the court's own Instruction No. 6:

"In connection with a charge of murder against a person, you are instructed that our Statute provides that 'any person who shall kill another in the necessary defense of his life, his family or his property, or in legal defense of any illegal proceedings against himself, his wife or family, shall be adjudged "not guilty."' This Statute also applies under a charge of assault with intent to kill and murder; and in this case, pursuant to said Statute, the Defendant interposes the additional defense that the shooting by him of his pistol at and toward the said prosecuting witness, J. W. Harper, Jr., was done in the necessary defense of his property. So I charge you that if you believe the defendant fired the shot to prevent the prosecuting witness from taking property belonging to the defendant and that such shooting was necessary to prevent the prosecuting witness

from taking same, then under such circumstances the defendant would be justified and you should acquit him."

All assignments are without merit. Finding no error the judgment is affirmed; and it is so ordered.

SADLER, BICKLEY, BRICE, and LUJAN, JJ., concur.