361 P.2d 152

Thomas N. BROWN, Jr., by Thomas N. Brown, Sr., his father and next friend; and Thomas N. Brown, Sr., Plaintiffs-Appellants,

v.

Jesus R. MARTINEZ, also known as J. Ross Martinez, and also known as Jess Martinez, Defendant-Appellee.

No. 6735.

Supreme Court of New Mexico.

April 7, 1961.

Denny & Glascock, Lowell E. McKim, Gallup, for appellants.

Howard F. Houk, Santa Fe, for appellee.

MOISE, Justice.

Appellants, being father and son, appeal from a judgment dismissing their claim for damages against appellee growing out of injuries suffered by the son when he was shot in the left leg while engaged

with several other boys in a watermelon stealing escapade on appellee's property.

We will refer to the son as appellant, the father being a party to the suit merely to recover items of expense incurred by him for medical and hospital care for the son, and as next friend because of the son's minority.

For a consideration of the issues raised by appellant and necessary for a decision there is no need to set forth the facts in any detail.

It is sufficient to point out that on the night of September 18, 1954, appellant, a 15-year old boy, and two other boys visited appellee's garden patch adjacent to the road for the purpose of stealing melons. About 8:30 or 9:00 p. m., the next night, being September 19, 1954, appellant with several other boys again went to the farm of appellee for the purpose of stealing watermelons. While two of the boys entered the melon patch, appellant went to the southeast corner of the property and was in the highway right of way close to the fence when appellee hearing the boys in the patch came out of his house with a rifle in his hand, called to the boys to get out, and seeing the two boys running toward the southwest corner of the property fired the gun toward the southeast to scare them, the bullet striking appellant in the back of the left leg, half way between the ankle and the knee,

breaking the bones and coming out of the front of the leg.

Appellant's first point is an attack on the court's finding to the effect that appellant was "next to the fence toward the southeasterly end of the melon patch." He argues that according to the testimony of appellant and the boy with him at the fence they were closer to the center of the patch and that since, according to their testimony, they started running toward the west as soon as appellee yelled, and since the bullet entered at the rear of the leg and came out the front, the physical facts simply do not coincide with the court's finding. The only importance that we can see in the point is to raise an issue concerning appellee's testimony that he fired toward the southeast, away from where he saw the boys running and that he did not fire with intention of hitting anyone but only to scare them. This testimony of appellee was evidently believed by the court, as opposed to the evidence with which appellant attempts to reconstruct the situation at the time of the shooting, and although in the view we take of the case, this question is of small importance, we would point out that the finding of the court is supported by substantial evidence and accordingly will not be disturbed by us under a long established and uniformly followed rule of review in this court. Adams v. Cox, 55 N.M. 444, 234 P.2d 1043; Little v. Johnson, 56 N.M. 232, 242

P.2d 1000; Pentecost v. Hudson, 57 N.M. 7, 252 P.2d 511.

We now come to the determinative issue in the case. In addition to facts related above, the court also found that a considerable quantity of melons were taken or destroyed and that the fence between the patch and the road was damaged, and as a conclusion of law held that on the night in question appellant and the other boys had assembled unlawfully "with the intent to do an unlawful act of force and violence against the property of the defendant (appellee) and to commit an unlawful act against the peace and that they did commit such unlawful acts by trespassing upon the defendant's land with intent and purpose of stealing crops from that land." The court further concluded that appellant and his companions "did unlawfully injure the fence enclosing the lands of defendant (appellee)"; that the appellee "acted reasonably and prudently to prevent any further trespassing against his land and crops" and his actions "did not constitute the use of unnecessary force, malice or wilful or specific intent to injure" appellant or anyone else but was only "such force as was reasonably necessary to eject" the trespassers from the property.

Appellant asserts that the conclusions that defendant acted reasonably and prudently to prevent further trespassing; that he did not use excessive force and was free from malice or wilful intent to injure appellant were error, and further that in firing a high powered rifle under the facts and circumstances here present the court erred in not concluding appellee's actions were wilful and intentional or done with reckless disregard of consequences or in a grossly negligent manner.

There is no question that appellant, together with his companions, was engaged in an illegal undertaking, viz., trespassing on land occupied by appellee and stealing his crop; also that they had done some very minor injury to his fence. The question thus presented is whether or not injury resulting from the use of such force as a rifle to prevent a trespass or loss of property is actionable.

State v. McCracken, 22 N.M. 588, 166 P. 1174, 1176, was a case in which the defendant was charged with murder for killing a trespasser on land attempting to build a fence thereon. This court there said:

"We do not believe that the law, under such circumstances, would have justified the appellant in using force to the extent of taking human life in order that he might assert his dominion over the property in question. In Wharton on Homicide (3rd Ed.), § 526, it is said:

" 'While the law justifies the taking of life when necessary to prevent the commission of a felony, one cannot defend his property, other than his habitation, to the extent of killing the aggressor for the mere purpose of preventing a trespass. Rather than slay the aggressor to prevent a mere trespass, he should yield and appeal to the courts for redress.' "

In that same case the following was quoted with approval from Carpenter v. State, 62 Ark. 286, 36 S.W. 900, 907:

"But the right to defend property against one who manifestly intends or endeavors, by violence or surprise, to commit a known felony, to the extent of slaying the aggressor, does not include the right to defend it, to the same extent, where there is no intention to commit a felony. A man may use force to defend his real or personal property in his actual possession against one who endeavors to dispossess him without right, taking care that the force used does not exceed what reasonably appears to be necessary for the purpose of defense and prevention. But, in the absence of an attempt to commit a felony, he cannot defend his property, except his habitation, to the extent of killing the aggressor, for the purpose of preventing a trespass; and, if he should do so, he would be guilty of a felonious homicide. Life is too valuable to be sacrificed solely for the protection of property. Rather than slay the aggressor to prevent a mere trespass, when no felony is attempted, he should yield, and appeal to the courts for redress. Ordinarily the killing allowed in the defense of property is solely for the prevention of a felony."

State v. Waggoner, 49 N.M. 399, 165 P.2d 122, 124, was a case wherein appellant was charged with assault with intent to kill growing out of his firing a pistol at the complaining witness who was in the process of moving some property off lands leased by appellant. The court noted that the instruction given as to the right of appellant to use force to stop the prosecuting witness set forth no qualification of or limitation on a person's right to shoot to get back property being removed from his premises, and stated:

"Even if Harper had been a trespasser at the time of the assault, no trespass being threatened as against appellant's habitation, an attempt to to take the life of the trespasser merely to recover property would not have been justified. The rule in this respect is well settled."

Next we notice State v. Couch, 52 N.M. 127, 193 P.2d 405, strongly relied on by appellee, a case wherein appellant was convicted of voluntary manslaughter when he shot and killed a man who was throw-

ing stones at his residence. While reversing the case and granting a new trial the court examined the law of homicide when committed in defense of a person's abode. In doing so, the following was quoted from State v. Taylor, 143 Mo. 150, 44 S.W. 785, 789:

"We have thus gone at length into a review of the law upon this subject, and we deduce from the decided cases and the standard authors that a mere civil trespass upon a man's dwelling house does not justify him in slaying the trespasser; that the owner may resist the trespass, opposing force against force, but he has no right to kill unless it becomes necessary to prevent a felonious destruction of his property or the commission of a felony therein, or to defend himself against a felonious assault against his life or person; that if he kills without reasonable apprehension of immediate danger to his person or property, but in the heat of passion aroused by the trespasser, it will be manslaughter * * *."

State v. Beal, 55 N.M. 382, 234 P.2d 331, 335, should also be noticed. This is a case where a boy, along with some companions, was out at night soaping windows as part of a Halloween prank. The court, while affirming a second degree murder conviction, had the following to say:

"A well founded belief that a known felony was about to be committed will extenuate a homicide committed in prevention of the supposed crime, and this upon a principle of necessity; but when the necessity ceases, and the supposed felon flees, and thereby abandons his proposed design, a killing in pursuit, however well grounded the belief may be that he intended to commit a felony will not extenuate the offense of the pursuer. This extenuation rests upon an actual felony committed, and a necessity for the killing to prevent the escape of the felon. The evidence shows that no felony had been committed. The defendants saw one of the boys running away at the time he stepped out of the trailer door. He ran from his trailer house to the pick-up truck of his father-in-law, saw two more boys run around the side of the grocery store and on up the highway. He then went to the edge of the pavement and began shooting. The last shot in the magazine of his automatic pistol was the fatal one which killed the deceased who was running away and had travelled approximately seventy feet from the premises on the public highway when he was felled."

We are well aware that all the cases cited above and certain other cases hereinafter cited are criminal cases, where-

as the present case is civil. We do not consider this fact to make any difference since our study of the authorities convinces us that rules of law governing the liability of appellee for shooting and wounding appellant while stopping a trespass or the theft of watermelons are the same whether the proceedings be civil or criminal. 25 A.L.R. 508, 537.

From that part of the trial court's decision which found damage to appellee's fence and injury to his crop we take it that it was the court's feeling that appellant and his companions had gotten together to violate and were violating § 40–47–12, N.M.S.A.1953, which reads as follows:

"The unlawful cutting, destruction or injury to any fence enclosing in whole or in part any real estate or lands, to which lands any person or persons, company or corporation, has a good and indefeasible title either by grant from the government of Spain or Mexico, or under the laws of the United States or New Mexico, and the unlawful and malicious destruction or injury of any hay, stock, grain, crop, orchard or building on any such land, is hereby declared a felony."

On the other hand, appellant argues that if appellant was guilty of anything it could only have been a misdemeanor and calls our attention to § 40–47–5, N.M.S.A.1953, which reads as follows:

"Every person who shall wilfully commit any trespass, by entering upon the garden, orchard, vineyard, or any other improved land belonging to another, without the permission of the owner thereof, with intent to cut, take, carry away, destroy or injure the trees, grain, grass, hay, fruit, or vegetables there growing, shall be punished by fine not exceeding twenty-five dollars ($25.-00), nor less than three dollars ($3.00)."

That there was no sufficient proof of a violation of § 40–47–12, quoted above, at least in so far as the injury to the fence is concerned, would seem to be clear. The findings made do not include anything concerning the origin of appellee's title to the land on which he resided although the proof shows he bought it from a neighbor, a necessary incident to guilt of violation of this part of the section being proof of "good and indefeasible title either by grant from the government of Spain or Mexico, or under the laws of the United States or New Mexico." However, even if this proof was sufficient we are convinced that the acts of appellant and his companions are not such as came within the intent of this statute. In simplest terms, the boys were out on a watermelon stealing escapade. They had no intent to injure any fence of appellee even if in going into the melon patch they incidentally did remove some staples holding the fence strands to some posts.

It is interesting to note that although the court found an unlawful injury to the fence he did not couple this with any conclusion that there was an unlawful and malicious destruction or injury of the crop. A reading of the statute makes it clear that for the acts to be felonious the unlawful injury to the fence *and* unlawful and malicious destruction or injury to the crop must coincide. As we interpret the court's findings and conclusions he did not decide that the appellant was guilty of violating § 40–47–12, supra. That the actions proven constituted a violation of § 40–47–5 would seem to be clear. However, these acts were only a misdemeanor. §§ 40–1–3, 40–1–4, N.M.S.A.1953. Restatement of Law of Torts, § 140; Howard v. Com., 198 Ky. 453, 248 S.W. 1059. Compare State v. Bailey, 27 N.M. 145, 198 P. 529.

The court also concluded that the boys assembled unlawfully to do an unlawful act of force and violence against the property of appellee and to commit an unlawful act against the peace and that they did commit such unlawful acts by trespassing. It is clear that by this conclusion the court determined that appellant was guilty of violating § 40–12–10, N.M.S.A.1953, the material parts of which read as follows:

"If three (3) or more persons shall assemble together, with intent to do any unlawful act with force and violence against * * * property of another, or to do any unlawful act against the peace * * * and shall make any movement or preparation therefor, the persons so offending shall each, on conviction thereof, be fined in any sum not exceeding two hundred dollars ($200), or be imprisoned not exceeding six (6) months, or both, at the discretion of the court in which the conviction is had."

It will be noted that the acts prohibited in this section are likewise only misdemeanors (§§ 40–1–3, 40–1–4, N.M.S.A.1953) and the rules hereinafter set forth concerning trespass and misdemeanors generally apply.

The question then becomes one of whether appellee was justified in shooting to prevent a trespass or the stealing of his watermelons, being misdemeanors under the law.

There is an exhaustive note in 25 A.L.R. 508, on the general subject of "Homicide or Assault in Defense of Habitation or Property." At page 542, the note writer states the rule thus:

"While a man may use as much force as is necessary in the defense of his property, it is generally held that, in the absence of the use of force on the part of the intruder, he is not justified in the use of such force as to inflict great bodily harm or to endanger life."

On page 543 appears the following:

"The use of a deadly weapon in the protection of property is generally held, except in extreme cases, to be the use

of more than justifiable force, and to render the owner of the property liable, both civilly and criminally, for the assault. Rauck v. State (1887) 110 Ind. 384, 11 N.E. 450; State v. Gilman (1879) 69 Me. 163, 31 Am.Rep. 257, 3 Am.Crim.Rep. 15; Hartman v. Hoernle (1918) — Mo.App. —, 201 S.W. 911; Shriver v. Bean (1897) 112 Mich. 508, 71 N.W. 145; Robinson v. Stimer (1908) 154 Mich. 244, 117 N.W. 634; State v. Smith (1892) 12 Mont. 378 30 Pac. 679; Braddy v. Hodges (1888) 99 N.C. 319, 5 S.E. 17; State v. Scott (1906) 142 N.C. 582, 9 L.R.A. (N.S.) 1148, 55 S.E. 69."

It is our conclusion that the quotations from State v. McCracken, supra; State v. Waggoner, supra; and State v. Beal, supra, are all in accord with these rules. See also State v. Terrell, 55 Utah 314, 186 P. 108, 25 A.L.R. 497, being a case involving burglary and defense of habitation where a different rule applies. This case was cited and quoted from in State v. Couch, supra.

We are here met by appellee's argument that it was for the court to determine as a fact whether or not excessive force was used, and although the court denominated it a conclusion, the court found that appellee acted "reasonably and prudently to prevent any further trespassing against his land and crops" and that the force used was only such amount as was "reasonably necessary to eject" appellant and the other boys from the property.

Appellee calls attention to the following, quoted from the note in 25 A.L.R. 508, at page 548:

"Whether the force used by an owner of property, in its protection against aggression, was more than the attack thereon warranted, is a question of fact for the jury to determine under proper instructions from the court. Riddle v. Brown (1852) 20 Ala. 412, 56 Am.Dec. 202, 9 Mor.Min.Rep. 219; Riffel v. Letts (1916) 31 Cal.App. 426, 160 Pac. 845; McLean v. Colf (1918) 179 Cal. 237, 176 Pac. 169; Wharton v. People (1881) 8 Ill.App. 232; Carter v. Sutherland (1884) 52 Mich. 597, 18 N.W. 375; State v. Goode (1902) 130 N.C. 651, 41 S.E. 3, 13 Am.Crim.Rep. 178."

and the following quoted from page 561:

"Whether the force used in removing a trespasser was greater than the circumstances required is a question of fact to be determined by the jury, in view of all the surrounding facts and circumstances, under proper instructions from the court. Hyde v. Cain (1909) 159 Ala. 364, 47 So. 1014; Com. v. Clark (1840) 2 Met. (Mass.) 23; Com. v. Dougherty (1871) 107 Mass. 250; Com. v. Wright (1893) 158 Mass. 149, 19 L.R.A. 206, 35 Am.St.Rep. 475, 33 N.E. 82; State v. Taylor (1880) 82

N.C. 554; Com. v. Ribert (1891) 144 Pa. 413, 22 Atl. 1031."

In addition, this court said in State v. Couch, supra [52 N.M. 127, 193 P.2d 413]:

"Whether the amount of force used by appellant was more than the attack warranted was a question for the jury to determine, under proper instructions from the court."

While in no way questioning the rules relied upon by appellee, or the application thereof in the cases cited in State v. Couch, supra, we do not think that the case here presents a question of fact of whether or not the force used by appellee was reasonable or excessive. Just as in Padilla v. Chavez, 62 N.M. 170, 306 P.2d 1094, it was held that as a matter of law a police officer had no right to shoot to place a misdemeanant under arrest, absent an attempt to inflict bodily harm on the officer, so here, as a matter of law the use of a gun by appellee was not permissible and when appellee did so he became liable to appellant. Also, the trial court did not consider that he was making findings of fact but denominated the determinations complained of as conclusions of law. The conclusions reached were erroneous.

■ Our examination of the authorities convinces us that the question of the reasonableness of resort to firearms to prevent a trespass or to prevent commission of an unlawful act not amounting to a felony is one of law for the court, and that such conduct is not excusable.

Dean Prosser in his Handbook of the Law of Torts, states the rule thus:

"The reasonableness of the force used is usually a question of fact for the jury. But as in the case of self-defense, the law has marked out certain limitations. The force used must be of a kind appropriate to the defense of the property. A push in the right direction may be proper where a slap in the face is not. *And, since the law has always placed a higher value upon human safety than upon mere rights in property, it is the accepted rule that there is no privilege to use any force calculated to cause death or serious bodily injury where only the property is threatened.* The defendant may use the force reasonably necessary to overcome resistance and expel the intruder, and if in the process his own safety is threatened, he may defend himself, and even kill if necessary, but in the first instance a mere trespass does not justify such an act." (Emphasis ours.)

■ There is no suggestion in the proof here that appellee in any way felt his safety was threatened. Accordingly, under the facts as proven and found, the appellee acted improperly and is liable for injuries caused in using a gun in the manner he did, and with such unfortunate consequenc-

es, in order to drive away trespassers on his property, or to protect his watermelons, or to scare the intruders. Newcome v. Russell, 133 Ky. 29, 117 S.W. 305, 22 L.R.A., N.S., 724; Com. v. Emmons, 157 Pa.Super. 495, 43 A.2d 568; People v. Doud, 223 Mich. 120, 193 N.W. 884, 32 A.L.R. 1535; McCoy v. Taylor Tire Co., Ky.1953, 254 S.W.2d 923; State v. Vance, 17 Iowa 138; Bethley v. Cochrane, La.App.1955, 77 So.2d 228; State v. Schloredt, 57 Wyo. 1, 111 P.2d 128. Compare State v. Childers, 133 Ohio St. 508, 14 N.E.2d 767.

Hartman v. Hoernle, Mo.App., 201 S.W. 911, was a case involving the shooting of a trespasser who was in the act of stealing watermelons, and is very similar to the instant case on its facts. Concerning that case it was stated in La Bella v. Southwestern Bell Telephone Co., 224 Mo.App. 708, 24 S.W.2d 1072, 1077:

> "In Hartman v. Hoernle (Mo.App.) 201 S.W. 911, it was held in effect that while one is entitled to resist a trespass upon his land, and the taking of his melons, the defendant was not warranted in using more force than necessary to eject the trespassers or to protect his property, and particularly not justified in unnecessarily assaulting plaintiff with a deadly weapon although plaintiff, when injured, was a trespasser and in the act of violating the law."

There remains only one additional point that need be noticed. Does it make any difference that the act was not done intentionally, but was in the nature of an accident, the appellee intending to shoot only for the purpose of scaring the trespassers and in a direction where he did not know any boys were present?

Restatement of Law of Torts, § 16, reads as follows:

> "(1) If an act is done with the intention of inflicting upon another an offensive but not a harmful bodily contact or of putting another in apprehension of either a harmful or offensive bodily contact, and such act causes a bodily contact to the other, the actor is liable to the other for a battery under the rule stated in § 13 although the act was not done with the intention of bringing about the resulting bodily harm.

> "(2) If an act is done with the intention of affecting a third person in the manner stated in Subsection (1), but causes a harmful bodily contact to another, the actor is liable to such other as fully as though he intended so to affect him."

Following is this comment on Subsection (2):

> "b. The intention which is necessary to make the actor liable under the rule stated in this Section is not neces-

sarily an intention to cause a harmful or offensive contact or an apprehension thereof to the plaintiff himself or otherwise to cause him bodily harm. It is enough that the actor intends to produce such an effect upon some other person and that his act so intended is the legal cause of a harmful contact to the other. It is not necessary that the actor know or have reason even to suspect that the other is in the vicinity of the third person whom the actor intends to affect and, therefore, that he should recognize that his act though directed against the third person involves a risk of causing bodily harm to the other so that the act would be negligent toward him."

and this is followed by Illustration 3 which is a situation identical to that before us:

"3. A and B are trespassers upon C's land. C sees A but does not see B nor does he know that B is in the neighborhood. C throws a stone at A which misses him. Immediately after C has done so, B raises his head above a wall behind which he has been hiding. The stone misses A but strikes B, putting out his eye. C is liable to B."

See, also, State v. Vance, supra; Hartman v. Hoernle, supra; Randall v. Ridgley, La.App., 185 So. 632; La Bella v. Southwestern Bell Telephone Co., supra.

It follows from what has been said that the cause must be reversed and remanded with instructions that the court set aside its order of dismissal; determine appellants' damages; and otherwise proceed in a manner not inconsistent herewith.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

CHAVEZ and NOBLE, JJ., not participating.